In re WICACO MACHINE CO.,
INC., Debtor.

QUAKER CITY IRON WORKS,
INC., Plaintiff,

v.

Jonathan H. GANZ, Esquire, Trustee, and
the Wicaco Machine Corporation, Debt-
or, and the Creditors' Committee, By Its
Counsel, Joseph A. Dworetzky and
James S. Gkonos, Esquires, Defendants.

Bankruptcy No. 82–04534G.
Adv. No. 83–0618G.

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 17, 1984.

As Amended April 23, 1984.

Lloyd J. Schumacker, Schumacker &
Lunkenheimer, Philadelphia, Pa., for plain-
tiff, Quaker City Iron Works, Inc.

Jonathan H. Ganz, Pincus, Verlin, Hahn,
Reich & Goldstein, Philadelphia, Pa., trus-
tee.

Joseph A. Dworetzky, James S. Gkonos,
Drinker, Biddle & Reath, Philadelphia, Pa.,
for Creditors' Committee of Wicaco Ma-
chine Corporation and Special Counsel to
Jonathan H. Ganz, Esquire, Trustee.

William J. McDevitt, Hepburn, Willcox,
Hamilton & Putnam, Philadelphia, Pa., for
debtor/defendant, Wicaco Machine Co., Inc.

OPINION

EMIL F. GOLDHABER, Bankruptcy
Judge:

The issue in the case at bench is whether
goods consigned by Quaker City Iron
Works, Inc. ("Quaker"), to the debtor are
subject to the claims of the debtor's unse-
cured creditors, thus necessitating a denial
of Quaker's complaint for reclamation of
those goods from the debtor. For the rea-
sons expressed herein we find that the
goods are subject to such claims and conse-
quently we will deny relief on the com-
plaint.

The facts of this case are as follows:[1]
Wicaco Machine Corporation ("the debtor")
filed a petition for reorganization under
chapter 11 of the Bankruptcy Code ("the
Code") on September 23, 1982, although the
proceeding has since been converted to
chapter 7. Prior to the filing of the peti-
tion for reorganization the debtor had been
engaged in the business of manufacturing
and selling machine parts. To broaden the
scope of its inventory the debtor contracted
with the Philadelphia Valve Company, Inc.
("PVC"), on July 25, 1978, for what has

---

**1.** This opinion constitutes the findings of fact
and conclusions of law required by Bankruptcy
Rule 7052 (effective August 1, 1983).

been disputedly characterized as a "consignment of goods" from PVC to the debtor. To protect its interest in the goods, PVC filed financing statements on August 2, 1978, in accordance with the Uniform Commercial Code ("UCC") of Pennsylvania. Shortly thereafter PVC changed its name to Valve Liquidating Corporation ("VLC") which prompted VLC to file new financing statements on the goods on December 1 and December 4, 1978. The financing statements indicated that their maturity date was "within three years." Quaker acquired VLC's rights, if any, in the consigned goods in December of 1981.

During all relevant times, Quaker or its predecessor[2] in interest delivered goods to the debtor with the mutual understanding that the goods were for resale, and if unsold could be returned. The items were of the same kind generally sold by the debtor and it was not required to remit to Quaker payment on any item until it was sold.

From August to November of 1978, the goods in question were delivered to the debtor's business premises which was on property leased from Quaker's predecessor. In November, the debtor changed its place of business and moved the goods to its new location where all later deliveries were made. The goods at issue were sold at both locations under the name of one of Quaker's predecessor's who was then the "consignor." Nonetheless, at all pertinent times the debtor sold other merchandise from both locations which merchandise was of the same kind as the "consignor's" other goods.

The dispute at bench arises under 13 Pa. Cons.Stat. § 2326 of the Pennsylvania UCC which is reproduced in the footnote.[3] Under § 2326(a)(2) goods are on "sale or return" if they are delivered primarily for resale and if the purchaser can return them even though they conform to the contract of sale. In this type of transaction an *actual* sale of the goods occurs. Goods are *deemed* on "sale or return" with respect to the claims of the consignee's creditors where the goods are delivered to it for his sale and such consignee maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making the delivery. § 2326(c). Section 2326(c) addresses the situation where goods are *consigned* to a merchant although *no actual sale occurs.* "Under the [UCC] a consignment sale is converted into a sale or return in order to protect the creditors of the consignee unless the consignor takes the specified steps to

2. Hereafter we will refer to "Quaker or its predecessor" as "Quaker."

3. § 2326. Sale on approval and sale or return; consignment sales and rights of creditors.
    (a) Definitions.—Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is:
    (1) a "sale on approval" if the goods are delivered primarily for use; and
    (2) a "sale or return" if the goods are delivered primarily for resale.
    (b) Rights of creditors of buyer generally.—Except as provided in subsection (c), goods held on approval are not subject to the claims of the creditors of the buyer until acceptance; goods held on sale or return are subject to such claims while in the possession of the buyer.
    (c) Consignment sales.—Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment" or "on memorandum." However, this subsection is not applicable if the person making delivery:
    (1) complies with an applicable law providing for the interest of a consignor or the like to be evidenced by a sign;
    (2) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others; or
    (3) complies with the filing provisions of Division 9 (relating to secured transactions).
    (d) Treatment of "or return" term.—Any "or return" term of a contract for sale is to be treated as a separate contract for sale within the statute of frauds section of this division (section 2201) and as contradicting the sale aspect of the contract within the provisions of this division on parol or extrinsic evidence (section 2202).

protect his interest." 3 Anderson, *Uniform Commercial Code* § 2–326:7 (3d ed. 1983). By its term § 2326(c) applied even though a deliverer of goods purports to retain title to them. Goods on "sale or return" or goods deemed on "sale or return" are subject to the claims of the consignee's creditors while they are in his hands. § 2326(b). The seller of the goods can protect the goods from the claims of the consignee's creditors by complying with one of the three exceptions stated in § 2326(c). As stated in the Advisory Committee notes to § 2326, "[p]ursuant to the general policies of this Act [the UCC,] which require good faith not only between the parties to the sales contract, but as against interested third parties, [§ 2326(c) ] resolves all reasonable doubts as to the nature of the transaction in favor of the general creditors of the buyer."[4] "The purpose of the statute [§ 2326] is to protect creditors of the dealer, the person in possession of the goods, who would have a right to assume that the goods were the property of the dealer." *Mann v. Clark Oil & Refining Corp.,* 302 F.Supp. 1376, 1380 (E.D.Mo. 1969), aff'd 425 F.2d 736 (8th Cir.1970).

Quaker contends that the goods were not delivered to the debtor on "sale or return" within the meaning of § 2326 and consequently are not subject to the claims of the debtor's creditors since the goods were held out for sale by the debtor under the trade name of the consignor, who was Quaker's predecessor in interest.[5] Quaker relies on the language § 2326(c) which indicates that a transaction cannot be deemed a "sale or return" unless the goods in question were "delivered to a person for sale and said person *maintains a place of business* at which he deals in goods of the kind involved, *under a name other than the name of the person making delivery....*" (Em-

phasis added). The essence of the argument is that the goods cannot be deemed on "sale or return" since the debtor allegedly sold the goods under the name of the consignor. Although the facts are somewhat unclear, we have determined that the goods were sold under the consignor's name. Nonetheless, we also found that, in the same business, the debtor sold other goods of the same kind in its own name. Quaker mistakenly believes that the debtor's sale of some goods under the name of the consignor will protect said consignor. The provisions of § 2326(c) highlighted above indicate otherwise. The consignor will not be protected if the name of the debtor's *place of business* differs from the *name of the person making the delivery.* The fact that only *some* of the sales at the debtor's place of business are undertaken in the name of the consignor is insufficient to protect the consignor since the debtor conducted business under the name of Wicaco Machine Corporation.

The situation in this case is very similar to that of *Mann v. Clark Oil & Refining Corp.,* 302 F.Supp. 1376 (E.D.Mo.1969), aff'd. 425 F.2d 736 (8th Cir.1970). In *Mann* the debtor had been granted "a 'franchise' [by Clark Oil & Refining Corp.] to use the Clark identification, colors, and the trade name of 'Clark Super 100' in connection with all gasoline sold from the demised premises." 302 F.Supp. at 1377. As related to the case at bench the issue in *Mann* was whether Clark's interest in the gasoline it had consigned to the debtor was superior to the claims of the debtor's creditors, if it was determined that the gasoline was delivered to the debtor's place of business *"under a name other than the name of the person making delivery...."* *Id.* at 1379 (emphasis in original). Although the business was

---

**4.** Pa.Stat.Ann. tit. 12A, § 2–326 Advisory Committee note (Purdon 1970) (the statutory provision is currently codified at 13 Pa.Cons.Stat. § 2326).

**5.** As tangential support for this position Quaker also avers that the goods in question were initially delivered to the debtor's business at a time that the realty underlying said business was leased from the consignor. In whatever slight way this averment weighs against the conclusions that the transaction was to be

deemed a "sale or return," it is more than counterbalanced by the fact that deliveries were made to this leased premises for only a few months. All subsequent deliveries of goods were made to the debtor's current business address which apparently is not leased from Quaker. Furthermore, Quaker cannot prevail on this theory since it failed to establish the value of the goods consigned and sold from the leased premises, and the value of the remainder.

**466**

identified as a "Clark station," the debtor's name on the doorway indicated he was the dealer. "[T]he name of the bankrupt was clearly visible and his name was identified as the 'dealer,' the person who was conducting the business." *Id.* at 1380. The court held that the gasoline was subject to the claims of the debtor's creditors and stated that "[w]hat the statutory phrase has reference to is a situation where the consignee has completely identified his business with that of the consignor to such an extent that potential creditors would necessarily assume that the business was that of the consignor solely." *Id.* at 1380. The business of the debtor in the case at bench was not so completely identified with the consignor that potential creditors would necessarily assume that the business was solely that of the consignor.[6] We hold that the goods in question are deemed on "sale or return" and are subject to the claims of the debtor's creditors unless Quaker can avail itself of one of the exceptions of § 2326(c).

The parties do not address the first exception to § 2326(c) which requires compliance with a relevant sign law. Under § 2326(c)(2) Quaker asserts that the debtor was generally known by his creditors to be substantially engaged in selling the goods of others. We find that Quaker failed to meet its burden of proof on this issue since only about one-fifth of the debtor's creditors had knowledge of the debtor's involvement in consignments, although this one-fifth constitutes 63% of the value of the claims against the debtor. Lastly, Quaker asserts that its filing of a financing statement under § 2326(c)(3) is adequate. Al-

though the filing was originally valid, the financing statement indicates that its maturity is "within three years." While it has since been revamped, the operative statutory provision in effect at that time provided that a financing statement which bears a maturity date is "effective until such maturity date and thereafter for a period of 60 days." 13 Pa.Cons.Stat. § 9403(b) (Nov. 1, 1979, P.L. 255, No. 86). Consequently, the financing statement lapsed since it was filed more than three years and sixty days prior to the filing of the petition for relief, and thus § 2326(c)(3) does not protect Quaker's interest in the consigned goods.

We will enter an order denying the request for reclamation.

6. In opposition to this result, Quaker cites *Newhall v. Haines (In Re Snyder),* 10 B.R. 1019 (D.C.Mont.1981). We find the reasoning in *Newhall* flawed for two reasons. First, although the court correctly notes at one point that § 2–326 is applicable even though a consignment purports to reserve title in the person delivering the goods, 10 B.R. 1021, later, the court incomprehensibly arrives at the conclusion that since the transaction at issue is a "true consignment, title to the merchandise remains with the consignor and does not inure to the benefit of the consignee's creditors or the bankrupt's trustee." *Id.* at 1023. Second, the court spuriously bifurcated the debtor's business between goods purchased from commer-

cial suppliers and those obtained on consignment from local sources. The court stated that the goods consigned from the local suppliers differed in kind from those supplied commercial outlets and thus did not meet the definition of goods deemed on "sale or return" within the meaning of § 2–326. The court failed to ask the pertinent question of whether goods consigned from one supplier were like other goods sold by the debtor. If so, the goods would be on consignment under § 2–326 and subject to the claims of the debtor's creditors. We find the result in *Newhall* contrary to the language of the statute as well as the advisory committee notes, and consequently, we find it unpersuasive.