**In re Margaret E. SULLIVAN d/b/a Topper's Quick Stop d/b/a Beth's Peco.**

**Bankruptcy No. 88–01920–ETH.**

United States Bankruptcy Court, N.D. Mississippi.

June 30, 1989.

Edward D. Lancaster, Law Office of John P. Fox, Houston, Miss., for Margaret E. Sullivan.

Donald L. Kilgore, Alford, Thomas and Kilgore, Philadelphia, Miss., for Prince Oil Co., Inc. and Prince Realty, Inc.

Jacob C. Pongetti, Columbus, Miss., Trustee.

## OPINION

DAVID W. HOUSTON, III,
Bankruptcy Judge.

On consideration of the motion for relief from the automatic stay and request for abandonment filed by Prince Realty, Inc., and Prince Oil Company, Inc., hereinafter referred to as Prince Realty and Prince Oil respectively; response to said motion having been filed by Jacob C. Pongetti, trustee for the bankruptcy estate; both parties having submitted memoranda of law and the Court having considered same, as well as, the testimony and exhibits produced at the hearing on said motion, hereby finds, orders and adjudicates as follows, to-wit:

### I.

The Court has jurisdiction of the subject matter and the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (G), and (O).

### II.

Margaret E. Sullivan, d/b/a Topper's Quick Stop, hereinafter referred to as debtor, operated a convenience store in Houston, Mississippi, which sold grocery items, as well as, gasoline. The real property on which the business was located was owned by Prince Realty and leased to the debtor. The gasoline dispensing equipment on the premises consisted of eight (8) pumps under a canopy in front of the store, the storage tanks in the ground, and the computers located in the building, all of which were supplied by Prince Oil for use in the debtor's business. The inventory of gasoline was also supplied by Prince Oil. The inventory and equipment were furnished to the debtor pursuant to a written agreement denominated as "Commission Marketing Agreement", entered into between Prince Oil and the debtor on February 17, 1988.

The Commission Marketing Agreement was filed in the land records of Chickasaw County, Mississippi, against the real property owned by Prince Realty and leased to the debtor. Prince Oil placed two 3″ × 4″ signs on the poles upholding the canopy over the eight gasoline pumps which read "Property of Prince Oil Co., Inc.". The telephone number and mailing address of Prince Oil were also set forth on the signs.

On October 25, 1988, the debtor converted her Chapter 13 bankruptcy case to a Chapter 7 case, and Jacob C. Pongetti was

appointed as trustee. Prince Oil and Prince Realty filed their joint motion for relief from the automatic stay and request for abandonment on January 23, 1989. The trustee responded by asserting that Prince Oil had failed to adequately perfect or protect its interest in the gasoline and the dispensing equipment from third party creditors and that, as such, the equipment and fuel should rightfully pass into the Chapter 7 estate pursuant to the hypothetical judicial lien created in the trustee's favor pursuant to 11 U.S.C. § 544(a)(1). The trustee does not object to the abandonment of the real property so long as such abandonment does not include the underground gasoline storage tanks.

(Future statutory references are to be considered as sections of the Mississippi Code unless specifically noted otherwise.)

At the hearing on this matter, Prince Oil conceded that it had not filed a UCC–1 financing statement and that its interest in the equipment was therefore not perfected as contemplated by Chapter 9 of the Mississippi version of the Uniform Commercial Code. Rather, Prince Oil argued that the Commission Marketing Agreement was not a surreptitious security interest which required perfection as a security agreement, but was instead a consignment agreement governed by Chapter 2 of the Mississippi Uniform Commercial Code. Prince Oil argued that pursuant to § 75–2–326, it, in effect, perfected its interest in the equipment at issue by satisfying the Mississippi business sign statute found at § 15–3–7 of the Mississippi Code. The matter was taken under advisement and both parties were requested to submit memoranda concerning whether the Commission Marketing Agreement was governed by Chapter 2 or Chapter 9 of the Mississippi Uniform Commercial Code, and whether the posting of the two 3″ × 4″ signs on the posts supporting the canopy above the gasoline pumps satisfied the requirements of § 15–3–7. The parties submitted timely memoranda, and the matter is now before the Court for consideration.

## III.

The threshold question before the Court is whether the agreement entered into between the debtor and Prince Oil for the retail sale of gasoline is a security agreement or a "true consignment" agreement. If the document is a security agreement which created a security interest in favor of Prince Oil, a properly filed financing statement would be the only method by which Prince Oil could perfect its interest in the collateral. See, § 75–9–302(1). Since Prince Oil, by its own admission, failed to file a financing statement, the hypothetical judicial lien of the trustee would take priority pursuant to 11 U.S.C. § 544(a)(1) if the Commission Marketing Agreement is found to be, in actuality, a security agreement.

"Security agreement" is defined in the Uniform Commercial Code as "an agreement which creates or provides for a security interest." § 75–9–105(1)(*l*). "Security interest" is defined in part, as follows: "an interest in personal property or fixtures which secures payment or performance of an obligation.... Unless a lease or consignment is intended as security, reservation of title thereunder is not a 'security interest' but a consignment is in any event subject to the provisions on consignment sales (section 75–2–326)." § 75–1–201(37). Chapter 9 of the Mississippi version of the Uniform Commercial Code applies to a security interest created by a lease or consignment "intended as security." § 75–9–102(2).

Whether a transaction is intended as a security agreement or a true consignment agreement depends on the intent of the parties at the time they entered into the transaction. In re Ide Jewelry Co., Inc., 75 B.R. 969, 977 (Bankr.S.D.N.Y.1987) (citing NYNEX BISC v. Becker Industries Corp. In re Beker Industries Corp., 69 B.R. 937, 939 (Bankr.S.D.N.Y.1987). Intent should be determined by an objective rather than subjective standard. In re Ide Jewelry Co., Inc., 75 B.R. at 977 (citations omitted).

In In re Ide Jewelry, Id., a dispute arose concerning the true ownership of certain

stolen gems for insurance proceeds purposes. Bharat Diamond Corp. had placed the uncut diamonds with Ide Jewelry Co., on a consignment basis, when the theft occurred. In determining whether Bharat had retained ownership or merely had created a security interest in the diamonds via the consignment agreement, the Court applied the following standards:

Facts which support the notion that a consignment was intended as security include: (i) setting of price by the consignee ... (ii) billing consignee upon shipment ... (iii) commingling of proceeds and failure to keep proper accounts by the consignee ... (iv) "mixing consigned goods with goods owned" ... and (v) consignor purporting to retain title to goods until paid ...

Conversely, the following facts indicate that a transaction was not intended as security and that it constitutes a true consignment: (i) consignor retained control over price ... (ii) consignee "was given possession with authority to sell only upon the express consent of [the consignor] as to the sale price" ... (iii) consignor may recall the goods ... (iv) consignee "was to receive a commission and not a profit on the sale" ... (v) consigned property was segregated from other property of the consignee ... (vi) consignor was entitled to inspect sales records and physical inventory of the goods in the consignee's possession ... and (vii) consignee has "no obligation to pay for the goods unless they are sold," ...

*In re Ide Jewelry Co.*, 75 B.R. at 978 (citations omitted).

After applying the above factors to the terms of the agreement between the two jewelers, the Court found the arrangement to be a "consignment intended as security." *Id.* at 979. In reaching the decision, the Court placed particular importance on two facts: (1) the consignor retained no control over the price to be charged by the consignee, and (2) no evidence was produced to indicate that the consignee was to be paid by commission rather than through a profit on the sale. *Id.*

In applying the *Ide Jewelry* factors to the present case, the Court examined closely the Commission Marketing Agreement entered into between Prince Oil and the debtor and observed the following terms, which are all indicative that the transaction constituted a true consignment rather than a security agreement: (1) Prince Oil retained sole control over setting the retail price (paragraph # 2); (2) the debtor received a commission rather than a profit [1] (paragraph # 6); (3) Prince Oil retained the right to inspect and/or audit all records of the debtor relating to gasoline sales (paragraph # 17); all proceeds from the sale of gasoline were to be segregated and deposited daily to the account of Prince Oil in a bank depository designated by Prince Oil (paragraph # 8); and the debtor became obligated to pay for gasoline when it was sold rather than when it was delivered (paragraph # 8).

Conversely, the Court recognizes that paragraph # 4 of the agreement states that Prince Oil shall retain title to the gasoline delivered to the debtor until it is sold. Pursuant to the holding in *Mann v. Clark Oil and Refining Corp.*, 6 UCC Rep.Ser. 1253, 302 F.Supp. 1376 (D.Mo.1969), *aff'd.* 425 F.2d 736 (8th Cir.1970), this retention of title would seem to dictate a ruling that the agreement was actually intended as a security agreement. However, the *Mann* decision is distinguishable on its facts and should not be applied to the matter presently before the Court.

In *Mann*, a service station operator, Kline, leased a station and equipment from Clark Oil. On the same day, Kline entered into a separate consignment agreement whereby Clark Oil would supply gasoline to the service station. Through the terms of the agreement, Clark Oil retained title to the delivered fuel until it was sold at retail.

---

1. The Agreement provides that the debtor shall be compensated "in an amount equal to one half (½) of the net profits on gasoline delivered and sold...." "Commission" is defined as compensation to an agent or salesman calculated as a percentage on the profit to the principal. *Black's Law Dictionary*, 246 (5th ed. 1979).

Kline later filed a voluntary petition in bankruptcy and the appointed trustee sought to recover certain alleged preferential transfers to Clark Oil. During the course of the litigation the Court was required to determine whether the agreement was a true consignment agreement or an agreement creating a security interest. The Court succinctly stated that "[i]t is clear to us that the actual purpose of Clark in requiring Kline to execute the Agreement was to make certain that Clark would be paid for the product delivered to Kline out of the proceeds of the sale of the gasoline." *Mann*, 6 UCC Rep.Ser. at 1258, 302 F.Supp. at 1380. Since the consignment was intended as security, the failure of Clark Oil to perfect its security interest as required by Article 9 of the Uniform Commercial Code subordinated Clark's unperfected interest to the hypothetical judicial lien of the trustee.

Unlike the consignment agreement examined in *Mann*, the Commission Marketing Agreement presently under scrutiny provides far more than merely the delivery of gasoline and the retention of title thereto by the supplier. Prince Oil was also obligated to furnish gasoline pumps, a canopy, and computerized dispensing equipment to the debtor, and yet, there is no corresponding retention of title language concerning these items. The lack of an express retention of title by Prince Oil in the dispensing equipment renders the Commission Market Agreement distinguishable from the document examined in *Mann* and further persuades this Court that the agreement was not intended as a security agreement.

In light of the foregoing application of the factors set forth in *In re Ide Jewelry* and having recognized that Prince Oil expressly retained title to the delivered gasoline, but not to the dispensing equipment, the Court finds that the Commission Marketing Agreement entered into between the parties was not intended as a security agreement and is, in fact, a true consignment agreement.

## IV.

If a consignment is not intended as a security interest, the consignor must comply with § 75-2-326, in order to obtain protection from other creditors of the consignee. *Nasco Equipment Co. v. Mason*, 291 N.C. 145, 229 S.E.2d 278, 20 UCC Rep. Ser. 761, 766 (1976). § 75-2-326, for reference purposes, is set forth as follows:

§ 75-2-326. Sale on approval and sale or return; consignment sales and rights of creditors.

(1) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is

(a) a "sale on approval" if the goods are delivered primarily for use, and

(b) a "sale or return" if the goods are delivered primarily for resale.

(2) Except as provided in subsection (3), goods held on approval are not subject to the claims of the buyer's creditors until acceptance; goods held on sale or return are subject to such claims while in the buyer's possession.

(3) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment" or "on memorandum." However, this subsection is not applicable if the person making delivery

(a) complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or

(b) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or

(c) complies with the filing provisions of the chapter on Secured Transactions (Chapter 9).

(4) Any "or return" term of a contract for sale is to be treated as a separate

contract for sale within the statute of frauds section of this chapter (Section 2–201) [§ 75–2–201] and as contradicting the sale aspect of the contract within the provisions of this chapter on parol or extrinsic evidence (Section 2–202) [§ 75–2–202].

Subsection (2) of § 75–2–326 allows goods held on "sale or return" to be subject to the buyer's creditors while the goods are in the buyer's possession. Ordinarily, a consignment sale, not being a true "sale" with title passing immediately, does not expose the goods involved to the claims of the consignee's creditors. However, subsection (3) of § 75–2–326 provides that a consignment sale is deemed to be a "sale or return", thereby subjecting the goods involved to the claims of the consignee's creditor's, if the consignee maintains a place of business at which he deals in goods of the kind involved under any name other than the name of the consignor. The consignor may protect his interest by complying with an applicable sign law, filing a UCC–1 financing statement, or by proving that the consignee was generally known by his creditors to be substantially engaged in selling the goods of others.

Section 75–2–326(3) obviously applies in the case at bar. Prince Oil delivered gasoline and equipment to the debtor who operated a convenience store with related gasoline facilities under the names Topper's Quick Stop and Beth's PECO. Accordingly, the consignment transaction is deemed to be a sale or return which allows the goods to be subject to the claims of the debtor/consignee's creditors. However, Prince Oil maintains that it protected its interest pursuant to § 75–2–326(3)(a) by complying with the Mississippi "business sign law."

At this juncture for academic purposes the Court will address the conflict between § 75–2–326(3) and § 75–9–114. The latter section, for reference purposes, is set forth as follows:

§ 75–9–114. Consignment.

(1) A person who delivers goods under a consignment which is not a security interest and who would be required to file under this chapter by section 75–2–326(3)(c) has priority over a secured party who is or becomes a creditor of the consignee and who would have a perfected security interest in the goods if they were the property of the consignee, and also has priority with respect to identifiable cash proceeds received on or before delivery of the goods to a buyer, if

(a) the consignor complies with the filing provision of the chapter on Sales with respect to consignments (section 75–2–326(3)(c)) before the consignee receives possession of the goods; and

(b) the consignor gives notification in writing to the holder of the security interest if the holder has filed a financing statement covering the same types of goods before the date of the filing made by the consignor; and

(c) the holder of the security interest receives the notification within five (5) years before the consignee receives possession of the goods; and

(d) the notification states that the consignor expects to deliver goods on consignment to the consignee, describing the goods by item or type.

(2) In the case of a consignment which is not a security interest and in which the requirements of the preceding subsection have not been met, a person who delivers goods to another is subordinate to a person who would have a perfected security interest in the goods if they were the property of the debtor.

Section 9–114 was added to the Uniform Commercial Code in 1972 in order to clarify an uncertainty concerning the status of a consignor under the 1962 version of the Code. It was unclear whether the protection of a consignor's interest via U.C.C. § 2–326(3)(c) required only an Article 9 filing, or the additional requirement of providing notice to *prior* secured parties of the consignee such as that required by U.C.C. § 9–312(3). U.C.C. § 9–114 adopted the latter view so that a consignor seeking to protect an ownership interest must "give the same notice to an inventory secured party of the debtor that he would have to give if his transaction with the consignee

was in the form of a security transaction instead of in the form of a consignment." U.C.C. § 9–114 (Editorial Board Comment, 1972 Official Text, p. 195). Unfortunately, the drafters of this statute, which on its face requires a consignor in a true consignment transaction to follow the same procedures applicable to a non-consignor creditor in a secured transaction, i.e., the filing of a financing statement, as well as, providing notice to prior secured creditors, overlooked the "business sign" and "general knowledge of creditors" optional methods of protecting an ownership interest permitted by U.C.C. § 2–326(3)(a) and (b) respectively.

■ Fortunately, most courts which have confronted this conflict have held that U.C.C. § 9–114 only applies to those situations where the consignor attempts to protect an ownership interest under the U.C.C. § 2–326(3)(c) filing exception, but not where the consignor has given public notice under U.C.C. § 2–326(3)(a) or (b) by posting a business sign or by establishing that the creditors have general knowledge that the debtor is substantially engaged in selling the goods of others. *BFC Chemicals, Inc. v. Smith Douglass, Inc.,* 46 B.R. 1009, 1019–20 (E.D.N.C.1985); *In re State Street Auto Sales, Inc.,* 81 B.R. 215, 218–19 (Bankr.D.Mass.1988); *The Escrow Connection v. Haas,* 189 Cal.App.3d 1640, 235 Cal.Rptr. 200, 3 U.C.C. Rep.Serv.2d 547 (1987); *Logan Paving Co. v. Massey–Ferguson Credit Corp.,* 172 Ga.App. 368, 323 S.E.2d 259, 40 U.C.C. Rep.Serv. 116 (1984); *see also,* 8 Anderson on the Uniform Commercial Code § 9–114:4 (1985).

This Court adopts the view of the foregoing authorities that U.C.C. § 9–114 does not apply to a consignor relying on either U.C.C. § 2–326(3)(a) or (b) for protection of an ownership interest in consigned goods.

U.C.C. § 9–114, however, is not applicable to the proceeding before this Court since the trustee's hypothetical judicial lien did not arise until the date the bankruptcy case was filed. This date, of course, is subsequent to the inception of the Prince Oil consignment agreement with the debtor. As such, Prince Oil should not be compelled to perform the impossible task of providing notice to a non-existent trustee.

V.

■ The Mississippi Business Sign Statute, found at § 15–3–7, provides as follows:

§ 15–3–7. Property of improperly disclosed principal or partner to be treated as property of one ostensibly transacting business.

If a person shall transact business as a trader or otherwise, with the addition of the words "agent," "factor," "and company," or " & Co.," or like words, and fail to disclose the name of his principal or partner by a sign in letters easy to be read, placed conspicuously at the house where such business is transacted, or if a person shall transact business in his own name without any such addition, all the property, stock, money and choses in action used or acquired in such business shall, as to the creditors of such person, be liable for his debts, and be in all respects treated in favor of his creditors as his property. However, the provisions of this section shall not apply to a refrigerated box, vending machine or other container when placed by a person, firm, or corporation in a store, mercantile establishment, or other place of business to be used therein, where said refrigerated box, vending machine, or other container is plainly marked with a sign, painted on or attached to and prominently displayed on such property, showing said property to be the property of the person, firm, or corporation, placing the same therein.[2]

The business sign statute provides that property used or acquired in a "trader's" business should be treated, in favor of his creditors, as his property unless either a sign "placed conspicuously at the house where such business is transacted" discloses the name of the principal or the

---

**2.** The Business Sign Statute was not repealed by the enactment of the Uniform Commercial Code in Mississippi and has survived an allegation that it violates the due process clause of the Fourteenth Amendment of the United States Constitution. *In re Bruneau's, Inc.,* 642 F.2d 146 (5th Cir.1981).

property itself is marked with a sign disclosing ownership by another. A person engaged in the gasoline filling station business is a "trader" within the meaning of the statute. *Ellzey v. Frederic*, 191 Miss. 633, 3 So.2d 849 (1941). (Construing Miss. Code 1930, § 3352). The statute does not apply to property neither used nor acquired in the trader's business. *Longino v. Delta Bank*, 76 Miss. 395, 24 So. 901, 902 (1899). (Construing Miss.Code 1892, § 4234). The parties do not dispute that the statute applies, but the trustee has alleged that compliance is lacking in this case.

The body of reported case law interpreting § 15–3–7 is devoid of a decision clearly delineating the physical dimensions required of the sign or specifying the degree of notice necessary for compliance.

Notwithstanding the lack of authorities relating to size or degree of notice, the Court is to be guided by decisions which hold that the statute is "highly penal" in nature and is to be "strictly construed against any claim made thereunder." *State Tax Comm'n v. Mitchell*, 235 Miss. 264, 109 So.2d 154, 156 (1959); *Merchants Grocery Co. v. Gulley Grocery Co.*, 210 Miss. 33, 48 So.2d 606, 608 (1950); *Yellow Mfg. Acceptance Corp. v. American Oil Co.*, 191 Miss 757, 2 So.2d 834, 836 (1941). The purpose of the statute is to defeat secret liens and it should not be "tortured into a strained construction to defeat honest transactions entered into in accordance with upright business practices." *Floyd v. C. Nelson Mfg. Co.*, 93 F.2d 857, 858 (5th Cir.1938). (Construing Miss.Code 1930, § 3352).

The two 3″ × 4″ signs posted by Prince Oil on the poles upholding the canopy above the pumps are of a white background with the following message in red lettering:

Property of

PRINCE OIL CO., INC.

P.O. Box 27

PHILADELPHIA, MS. 39350

601–656–4343

Although the signs are small in size, they provide adequate information to put a reasonably prudent interested creditor on notice that Prince Oil maintained an ownership interest at that location. The signs provide a telephone number, thereby enabling a creditor to make immediate further inquiry as to the extent of the ownership interest. Although only two signs were posted, they both appear in the vicinity of the "pump island" which is physically separated from the convenience store. It is, therefore likely that an *interested creditor* would consider all the gasoline dispensing equipment to be the property of Prince Oil.

Undoubtedly, Prince Oil could have done a better job in disclosing its property interests at the debtor's business location. Nevertheless, two signs were posted which, in the opinion of the Court, substantially comply with § 15–3–7. To hold that compliance was not achieved would, under the facts of this case, torture the statute into a strained construction which would serve only to defeat an honest transaction.

Accordingly, the Court finds that through compliance with § 15–3–7, Prince Oil qualifies under § 75–2–326(3)(a) to have its property located at the debtor's former business location withheld from the bankruptcy estate.

The Court is also of the opinion, although it has not been made an issue in this proceeding, that Prince Oil could likely establish that the debtor was generally known by her creditors to be substantially engaged in selling gasoline that belonged to someone other than herself. This, of course, would establish a second exception to the concept of "sale or return", which is provided in § 75–2–326(3)(b).

Prince Oil's and Prince Realty's motion to lift the automatic stay as to all the real and personal property described in said motion will be sustained and said properties shall be considered as abandoned from the bankruptcy estate.

An order consistent with this opinion shall be entered contemporaneously herewith.