[No. E003056. Fourth Dist., Div. Two. Mar. 9, 1987.]

ESCROW CONNECTION, Plaintiff and Appellant, v.
HERBERT HAAS et al., Defendants and Respondents;
KLAUS MEININGER et al., Third Party Claimants and Respondents.

COUNSEL

Best, Best & Krieger and Basil T. Chapman for Plaintiff and Appellant.

No appearance for Defendants and Respondents and for Third Party Claimants and Respondents.

OPINION

McDANIEL, J.—This appeal is from an order after judgment, more particularly a ruling in favor of third party claimants and against plaintiff-judgment creditor in connection with its efforts to levy execution on property believed to be owed by defendant-judgment debtors. There is no dispute on the facts and the legal determination turned on interpretation and application of section 2326 of the California Uniform Commercial Code. In our view, the trial court incorrectly interpreted the section, and so the order appealed from will be reversed with directions.

OPERATIONAL FACTS

In an effort to satisfy its judgment against defendants who do business as Unique Motor Cars, Ltd., plaintiff instructed the Riverside County Marshal

to seize and levy upon a certain new 1985 Mercedes Benz automobile, carrying dealer plates and in the possession of defendants. After the levy, Klaus Meininger and Autohaus Imports, Inc. (third party claimants) filed their third party claim with the marshal, and in due course the matter came before the trial court for resolution.

According to the undisputed facts, as disclosed by the record, defendants were in physical possession of the seized automobile. Although third party claimants insisted that they owned a hidden security interest in the automobile, plaintiff was unaware of such interest; moreover, third party claimants had never filed a financing statement asserting a security interest in this automobile. Based solely on these facts, the trial court ruled in favor of third party claimants, and this appeal followed.

### DISCUSSION

The sole issue presented on appeal calls for interpretation of section 2326 of the California Uniform Commercial Code, more particularly subdivisions (2) and (3).[1]

---

[1] In its entirety, section 2326 reads: "(1) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is

"(a) A 'sale on approval' if the goods are delivered primarily for use, and

"(b) A 'sale or return' if the goods are delivered primarily for resale.

"(2) Except as provided in subdivision (3), goods held on approval are not subject to the claims of the buyer's creditors until acceptance; *goods held on sale or return are subject to such claims while in the buyer's possession.*

"(3) *Where goods are delivered to a person for sale and the person maintains a place of business at which he or she deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return.* The provisions of this subdivision are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as 'on consignment' or 'on memorandum.' However, this subdivision is not applicable if the person making delivery does any of the following:

"(b) Establishes that the person conducting the business is generally known by his or her creditors to be substantially engaged in selling the goods of others.

"(c) Complies with the filing provisions of the division on secured transactions (Division 9).

"(d) Delivers goods which the person making delivery used or bought for use for personal, family, or household purposes.

"(4) Any 'or return' term of a contract for sale is to be treated as a separate contract for sale within the statute of frauds section of this division (Section 2201) and as contradicting the sale aspect of the contract within the provisions of this division on parol or extrinsic evidence (Section 2202).

"(5) If a person delivers or consigns for sale goods which the person used or bought for use for personal, family, or household purposes, these goods do not become the property of the deliveree or consignee unless the deliveree or consignee purchases and fully pays for the goods. Nothing in this subdivision shall prevent the deliveree or consignee from acting as the deliverer's agent to transfer title to these goods to a buyer who pays the full purchase price. Any payment received by the deliveree or consignee from a buyer of these goods, less any amount which the deliverer expressly agreed could be deducted from the payment for commissions, fees, or expenses, is the property of the deliverer and shall not be subject to the claims of the deliveree's or consignee's creditors." (Italics added.)

 Before the introduction of the Uniform Commercial Code, even though the interest of a consignor was commonly viewed as a "secret lien against creditors . . . as harmful as an unfiled chattel mortgage or conditional sale,"[2] a consignor could nevertheless retrieve the consigned goods in a contest with the consignee's creditors. The draftsmen of the Uniform Commercial Code effectively did away with the "secret lien" by providing, where a consignment be intended for security, that the consignor must file a financing statement under article IX of the Uniform Commercial Code. The drafters also provided that *all goods on consignment*—whether or not so placed to "secure" the consignor—*are subject to the claims of the consignee's creditors if the consignor fails to comply with the notice requirements of article II* of the Uniform Commercial Code.

In the case here, the third party claimants neither filed a financing statement under article IX nor complied with the notice requirements of article II.[3] California Uniform Commercial Code section 2326, subdivision (2) provides in pertinent part: ". . . *goods held on sale or return are subject to such claims while in the buyer's possession.*" (Italics added.)

Thus, the sole question in determining the respective rights of plaintiff and third party claimants is whether the automobile was held by the judgment debtor as a "sale or return" item.

Section 2326, subdivision (3) defines when goods are deemed held for "sale or return," stating that: "*Where goods are delivered to a person for sale and the person maintains a place of business at which he or she deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return.* The provisions of this subdivision are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or it uses such words as 'on consignment' or 'on memorandum'." (Italics added.)

 It is undisputed that judgment debtors, Herbert Haas and Patricia Haas, were maintaining a business selling cars under the name Unique Motor Cars, Ltd. They do not do business under the names Autohaus Imports, Inc., Klaus Meininger, or any other name even related to that of the third party claimants. Thus, with reference to creditors' claims against property held by Herbert and Patricia Haas and Unique Motor Cars, Ltd., the code creates

---

[2] *Liebowitz v. Voiello* (2d Cir. 1939) 107 F.2d 914, 916.

[3] The notice requirements of section 2326 require that the consignor either (1) file a financing statement or (2) prove that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others on consignment.

a *presumption*[4] that those automobiles are held on a "sale or return" basis. The California comment to the the cited section, subdivision 3, states: " '*This rule applies without regard to the agreement made between the wholesaler and retailer relative to retention of title in the wholesaler.* The wholesaler can protect himself only by complying with the filing provisions of Chapter [Division] 9 of the Code or (in States which have "sign statutes", which California does not) by putting up signs indicating that the goods are on consignment. This subsection [subdivision] relieves the court of the onerous task of determining whether, despite words of "consignment" in the agreement, the contract was in reality one of sale, thus making the goods available to the retailer's creditors.' "

In other words, the agreement between the consignor and consignee cannot operate to grant the consignor a unpublicized, nonpossessory lien.

In an attempt to avoid the obvious applicability of California Uniform Commercial Code section 2326, third party claimants have cited *Allgeier* v. *Campisi* (1968) 117 Ga.App. 105 [159 S.E.2d 458], in support of their argument that the seized automobile was not delivered to defendants "for sale" but was only delivered to enable defendants to "look for buyers." This argument misconstrues *Allgeier* and California Uniform Commercial Code section 2326. In *Allgeier* the court held:

"*Where,* as in the present case, *an individual owner of an automobile delivers it to an automobile dealer* for the purpose of having said dealer secure offers for the purchase thereof, and to sell the same upon approval of an offer by the individual owner, the automobile dealer to receive a commission of a set sum regardless of the sale price, such transaction is not a 'sale or return' transaction between a buyer and a seller within the meaning of Georgia Uniform Commercial Code § 109A-2-326, so as to make said automobile subject to levy and sale upon executions obtained against the automobile dealer by creditors of the dealer." (159 S.E.2d at p. 459, italics added.)

The sparse 200-word opinion in *Allgeier* did not elaborate upon the court's reasoning, but clearly involved distinguishable facts. The opinion emphasized that the automobile was delivered by an individual owner and that the dealer was to receive a set sum regardless of the sales price. ▪ In the case here, third party claimants are commercial dealers in automobiles and the defendants were to receive a commission on the sales price, not a flat fee. In other words, *this case involves a commercial supplier* of automobiles who should be bound to comply with the California Uniform Commercial Code

---

[4]This presumption can only be rebutted by the consignor proving that (a) it filed a financing statement or (b) that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others.

in the course of operating its business; whereas, the Georgia case merely involved a private individual who was essentially renting lot space to sell his used car. In fact, the California Legislature amended Uniform Commercial Code section 2326 in 1965 by adding subdivision (3)(d) providing for a special exemption relieving noncommercial transactions, which involve used goods, from the burden of compliance with section 2326.

In any event, the Georgia decision certainly does not stand for the proposition that a consignor's reservation of authority to approve the sales price entitles the consignor to a secret lien. This would obviously open the door to fraud and would defeat the purposes of section 2326.

Lack of express authority to conclude a sale does not bar a finding that the transaction between the dealer and his supplier was a sale or return under section 2326, subdivision (3). Another Georgia court, determining the applicability of the *Allgeier* decision stated: "We agree that the undisputed facts of this case fall squarely within the provisions of OCGA § 11-2-326(3). Logan, the owner of the tractor, delivered the tractor to Davis for the purpose of having Davis receive offers to purchase the tractor. The offers were to be approved by Logan, and Davis was to receive a commission for his efforts. Davis was an authorized Massey-Ferguson dealer which dealt in goods of this kind, and operated under a trade name different from that used by Logan. . . .

"*Allgeier* v. *Campisi* (1968) 117 Ga.App. 105, 159 S.E.2d 458, relied upon by appellant, is not controlling here. 'All that case says is that the facts did not qualify the situation as a "sale or return" under [OCGA § 11-2-326(1)(b)].' *In re A & T Kwik-N-Handi, Inc.* (M.D. Ga.1973) 13 UCC Rep. 779, 782. The case at bar is concerned with the application of OCGA § 11-2-326(3), which is much broader in scope than § 11-2-326(1)(b), which was at issue in *Allgeier.* Id.

"The purpose of OCGA § 11-2-326(3) is 'to protect the creditors of the person in possession of goods (the dealer) who would have a right to assume the goods were the property of the dealer [Davis]. The real owner [Logan] can protect [itself] by showing the creditor . . . of the dealer had no right to assume such ownership. This can be done under the provisions of the Uniform Commercial Code by showing (a) compliance with a relevant sign law, (b) that the dealer is known by his creditors to be substantially engaged in selling the goods of others, or (c) by compliance with the filing provisions of Article 9 (Secured Transactions) of the Code.' [Citations.] In the case at bar, Logan failed to take any of the statutorily prescribed protective steps." (*Logan Paving* v. *Massey-Ferguson Credit Corp.* (1984) 172 Ga.App. 368 [323 S.E.2d 259, 260-261.)

The third party claimants have argued that a judgment creditor here is not a creditor who "extended credit" to defendants and that therefore the statute is inapplicable. However, there is no support for such an interpretation, and the express language of the code is squarely to the contrary. California Uniform Commercial Code section 1201, subdivision (12) defines the term "creditor" to include ". . . a general creditor, a secured creditor, a lien creditor, and any representative of creditors . . . ." California Code Annotation 12 states that this definition of the term "creditor" is intended to include "all classes of creditors." Therefore, to invoke the statute, it makes no difference how the plaintiff became a creditor of the defendants.

Moreover, in the case here, plaintiff actually became a creditor of the defendants by delivering a downpayment of $9,000 to purchase a car. In delivering this downpayment, plaintiff relied on the representation of defendants that defendants purchased the cars themselves from Europe on a cash basis.

Third-party claimants seem to be suggesting that creditors must prove detrimental reliance on the lack of a financing statement in order for California Uniform Commercial Code section 2326 to apply. This is clearly not the law. Such a requirement would defeat the intent of the California Uniform Commercial Code to require a party claiming a nonpossessory lien to publicize its security interest. (Cal. U. Com. Code, §§ 9302, subd. (1) and 9305; Baird & Jackson, *Possession and Ownership: An Examination of the Scope of Article 9* (1983) 35 Stan.L.Rev. 175, 183.) ▪ The statute places the burden on the commercial consignor to do one of two things, either: (1) comply with the filing provisions of the division on secured transactions; or (2) prove that the person conducting the business is generally known by his or her creditors to be substantially engaged in selling the goods of others. (Cal. U. Com. Code, § 2326, subds. (3)(b) and (c).)

Thus, it was clearly the intent of the drafters of the code to compel consignors to comply with the filing statutes. *The code places the burden on the nonfiling consignor to prove the general public's state of knowledge regarding the consignee's business. There is no requirement that individual creditors must prove detrimental reliance in extending credit.*

Placing the risk on the first secured party is sensible because it creates an incentive for that creditor to make reliable information accessible to others. (See Dunham, *Inventor and Accounts Receivable Financing* (1949) 62 Harv.L.Rev. 588, 612.) On the other hand, requiring creditors to prove that they detrimentally relied on the consignor's failure to file would create great uncertainty in commercial transactions, opening up every claim to litigation and defeating the inducement to file financing statements.

Based upon the foregoing, we hold that third party claimants failed to meet the statutory burden devolving upon them, and the trial court incorrectly ruled in their favor.

## DISPOSITION

The order appealed from is reversed, and the trial court in No. Indio 43812 is directed to vacate paragraph 1 of its minute order of March 26, 1986, and to enter a new and different order under said paragraph 1 stating that the third party claim is denied.

Campbell, P. J., and Hews, J., concurred.