[No. E007231. Fourth Dist., Div. Two. Feb. 28, 1991.]

WAYNE M. MINOR, Plaintiff and Appellant, v.
KENNETH L. STEVENSON et al., Defendants;
PETER PAN MOTORS, Third Party Claimant and Respondent.

1614

## COUNSEL

Swarner & Fitzgerald, Edward L. Mackey and Jere L. Fox for Plaintiff and Appellant.

Callahan, McCune & Willis and Robert W. Thompson for Third Party Claimant and Respondent.

---

OPINION

McDANIEL, J.*—In this appeal, in the context of the Commercial Code, we are called upon to resolve a dispute over possession of a BMW automobile. Such dispute is between defendant's attaching creditor and a third party claimant who delivered the BMW to defendant. The dispute arose when plaintiff, the attaching creditor, levied on the BMW, purportedly owned by defendant, an automobile dealer. The third party claimant-seller then asserted ownership of the BMW. As we shall explain, if the three prerequisites specified in section 2326, subdivision (3) of the California Uniform Commercial Code have been met, the transaction will be deemed a "sale or return" with respect only to the claim of an attaching or lien creditor of the dealer. This obtains regardless of the intended nature of the transaction between the dealer and the seller, with the result that goods in the dealer's possession will be subject to the claims of the dealer's attaching creditors. Therefore, because the three prerequisites noted were present here, the attaching creditor of defendant-dealer must prevail over the third party claimant-seller who delivered the BMW to defendant-dealer. Accordingly, we shall reverse with directions the trial court's order in favor of the third party claimant.

### FACTUAL AND PROCEDURAL SYNOPSIS

Wayne M. Minor (plaintiff) obtained a default judgment against Kenneth L. Stevenson, T&S Enterprises (together, defendant) and others. Defendant operates an automobile retail accessory business and is a licensed California vehicle dealer. To realize upon the judgment, plaintiff caused a writ of execution to be issued by the trial court, and instructed the marshal to levy upon a number of automobiles carrying dealer plates, purportedly owned by defendant. Thereafter, Peter Pan Motors (claimant) asserted a right to possession of a certain BMW automobile which had been caught in the levy by the marshal.

· In the events leading to this dispute, defendant called Howard Johnson, claimant's assistant manager, to ask whether claimant could locate a white BMW 735 iL. Johnson said he could, and the deal was arranged. Claimant

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

then located and purchased the BMW in Palm Springs. The certificate of ownership was transferred from the Palm Springs owner to claimant showing claimant as the automobile's owner. Having arranged with the party in Palm Springs for someone with dealer plates to collect the car, claimant informed defendant of the BMW's location. Thereupon, defendant picked up the car, using dealer plates.

Depositions of three of claimant's employees reveal considerable confusion over whether claimant intended the BMW to be sold directly to defendant and later resold to a final buyer, or whether defendant would be an intermediate step through whom the car would pass from claimant to an ultimate purchaser. In past deals with defendant, Johnson stated he sold cars "To him. And then, in turn he sells them to customers." Johnson would register the car in the name of T & S Enterprises who would in turn register the car in the name of the ultimate buyer. With respect to the BMW's transfer to defendant, Johnson did not "know who [defendant] was selling the car to. I just know that we were going to sell it to him." When asked how delivery of this BMW was to be handled, Johnson replied, "Well, once we know all the funds have been good, then we'll send him down the title with the Bill of Sale." Johnson explained that a car cannot be released until it is paid for, and one cannot own the car until the documentation is transferred. Another of claimant's employees stated, "I've got to have the money to do a transaction. I can't give the car away."

Of dispositive significance, the foregoing recitation of the facts which were before the trial court showed: 1) the BMW was delivered to defendant for sale; 2) defendant is a person who maintains a place of business at which automobiles are sold; and 3) this business was conducted under a name other than Peter Pan Motors, the party who delivered the BMW to defendant.

As agreed, defendant deposited full payment for the car in claimant's local bank and faxed claimant a copy of the deposit slip as evidence of payment. However, for reasons not explained in the record, defendant later stopped payment on the check and told Johnson that he would not be buying the BMW.

After a hearing on the third party claim, the trial court issued its order, ruling that defendant's right to possession and title had been conditioned upon payment by check, with the result that defendant's "stop payment" order defeated defendant's title under section 2511 of the California Uniform Commercial Code, and thus, the court determined that claimant's title and right to possession of the BMW was superior to that of the attaching creditor (plaintiff) and defendant.

Plaintiff has appealed from the order, claiming a right in the BMW, as an attaching creditor, superior to that of claimant pursuant to California Uniform Commercial Code section 2326, subdivision (3).[1] We hold, when the elements of section 2326, subdivision (3) are present, as they were here, that a transaction between dealers or between a wholesaler and retailer must be deemed on sale or return, regardless of the intention of the parties. Thus, goods in the possession of defendant-dealer are vulnerable to levies of execution by defendant's creditors, and once a levy of execution has been perfected, the goods are secure against attack by third party claimants asserting rights based on title.

## DISCUSSION

The sole issue before us is whether subdivision (3) of section 2326 governs the respective rights of the parties to the automobile. ■ Statutory interpretation is "a question of law, and we are not bound by the trial court's interpretation." (*California Ins. Guarantee Assn.* v. *Liemsakul* (1987) 193 Cal.App.3d 433, 438 [238 Cal.Rptr. 346]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 242, p. 247.) In short, we must independently review the statute "with due consideration being given to the trial court's interpretation." (*California Ins. Guarantee Assn., supra*, at p. 438.) ■ Proceeding within the ambit of the foregoing guidelines, if it be determined that section 2326, subdivision (3) is controlling, then delivery of the BMW to defendant must be deemed on sale or return, thus subjecting the BMW to plaintiff's successful levy.[2]

---

[1] Hereinafter, all statutory references are to the California Uniform Commercial Code.

[2] Section 2326 provides:

"(1) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is

". . . . . . . . . . . . . . . . . . .

"(b) A 'sale or return' if the goods are delivered primarily for resale.

"(2)Except as provided in subdivision (3), goods held on approval are not subject to the claims of the buyer's creditors until acceptance; goods held on sale or return are subject to such claims while in the buyer's possession.

"(3) Where goods are delivered to a person for sale and the person maintains a place of business at which he or she deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subdivision are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as 'on consignment' or 'on memorandum.' However, this subdivision is not applicable if the person making delivery does any of the following:

"(b)[*sic*] Establishes that the person conducting the business is generally known by his or her creditors to be substantially engaged in selling the goods of others.

"(c) Complies with the filing provisions of the division on secured transactions (Division 9).

"(d) Delivers goods which the person making delivery used or bought for use for personal, family, or household purposes."

In an earlier case, we determined that a sale or return is deemed to exist if the elements of section 2326, subdivision (3) are present. (*Escrow Connection* v. *Haas* (1987) 189 Cal.App.3d 1640, 1644-1645 [235 Cal.Rptr. 200].) Those elements are: "[1] Where goods are delivered to a person for sale and [2] the person maintains a place of business at which he or she deals in goods of the kind involved, [3] under a name other than the name of the person making delivery . . . ." (§ 2326, subd. (3).)

Parsing out the three requirements of subdivision (3), as earlier summarized, the evidence shows that the BMW was transferred to defendant for resale. Not only was defendant in the business of selling cars, but in the past, claimant sold cars to defendant for sale to others. Indeed, whether or not defendant already had a purchaser in mind, there is no question but that he would ultimately sell the BMW to another. Also, defendant kept the BMW under dealer plates. These facts established that the BMW's transfer to defendant was for resale, thereby satisfying the first element of subdivision (3).

Second, defendant maintains a business of selling automobiles in Mission Viejo, California. Although the BMW was levied on at a residence rather than at the Mission Viejo address, the BMW, along with other automobiles seized at the same time, was sporting defendant's dealer plates.

Third, defendant sells automobiles under the name of T&S Enterprises, not under the name of Peter Pan Motors, Inc., Johnson or any other name related to that of third party claimant. The aggregate result of the foregoing was that all three of the prerequisites of section 2326, subdivision (3) were established and thus the transaction between plaintiff and defendant must be "deemed to be on sale or return . . . ." with respect to the claims of defendant's creditors. (§ 2326, subd. (3).)

Our analysis of this provision in *Escrow Connection* v. *Haas, supra*, 189 Cal.App.3d 1640, is controlling. That case concerned competing claims of a lien creditor and an unsecured consignor after a transfer of a vehicle for resale, where the unsecured consignor claimed it had a secret lien not evidenced by a financing statement. (*Id.*, at p. 1643.) In *Escrow Connection*, we reversed the trial court's finding in favor of third party claimants, holding that "the code creates a *presumption* that [transactions fitting the elements of section 2326, subdivision (3)] are held on a 'sale or return' basis . . . ." relieving the court of the task of determining whether an asserted consignment is really a sale. (*Id.*, at pp. 1644-1645, fn. omitted.) Here, then, we are relieved of the task of inquiring into the nature of the transaction to determine whether the transfer involved an outright sale of the car to defendant or whether the transfer was on consignment. Given that the

circumstances surrounding the transfer of the BMW fulfilled the three requirements of subdivision (3), the transaction between plaintiff and defendant must be *deemed* a sale or return, with the result that section 2326, subdivision (2) applies to govern the competing rights of the third party claimant and the attaching creditor.[3]

The transaction here was neither a consignment nor a sale in which the BMW could have been returned even had it conformed to the contract (see § 2326, subd. (1)(b)), for the sale failed because defendant stopped payment on his check. In this respect, the transaction here differed from that in *Escrow Connection* v. *Haas, supra*, 189 Cal.App.3d at page 1645, which involved a consignment. Nevertheless, if the prerequisites of subdivision (3) are fulfilled, the conclusive presumption applies regardless of the intent of the third party claimant and dealer-deliveree as to whether the transaction is a sale or consignment. (See *Escrow Connection, supra*, at p. 1645; *Fuller* v. *Texas Western Financial Corp.* (Tex.App. 1982) 635 S.W.2d 787, 789, affd. 644 S.W.2d 442, citing *Bufkor, Inc.* v. *Star Jewelry Co.* (Tex.Civ.App. 1977) 552 S.W.2d 522, 524; *Limor Diamonds* v. *D'Oro By Christopher Michael, Inc.* (S.D.N.Y. 1983) 558 F.Supp. 709, 711.)[4] Section 2326, subdivision (3) states, "the provisions of this subdivision are applicable *even though an agreement purports to reserve title to the person making delivery . . . ."* (Italics added.) Even though claimant asserts ownership of the BMW because the cash sale failed, the Code ignores the intent of the parties as to the type of transaction.

It appears there need not have been an actual sale or consignment between the parties for section 2326 to apply when the rights of creditors are at stake. (*Simmons First Nat. Bank* v. *Wells* (1983) 279 Ark. 204 [650 S.W.2d 236, 240], citing *In re KLP, Inc. Finance Co. Of America* v. *Morris* (N.D.Ga. 1980) 7 Bankr. 256; see, e.g., *First Nat. Bank of Blooming Prairie* v. *Olsen*, (Minn.Ct.App. 1987) 403 N.W.2d 661, 664.) It is sufficient that the three conditions contained in section 2326, subdivision (3), are satisfied.

---

[3] We note that in *Escrow Connection, supra*, at pages 1644-1645, we stated that satisfaction of subdivision (3) "creates a *presumption* that those automobiles are held on a 'sale or return' basis." However, this word choice created confusion at oral argument over exactly the type of presumption raised. Section 2326, subdivision (3) says: "the goods are *deemed* to be on sale or return" (italics added) indicating that the presumption is conclusive, i.e., irrebuttable.

[4] Claimant nevertheless argues that section 2326 applies only if the parties have agreed that the goods are returnable. Section 2326 states: "(1) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is . . . . [¶] (b) A 'sale or return' if the goods are delivered primarily for resale. " (§ 2326, subds. (1) and (1)(b).) Subdivisions (1) and (2) operate to establish the timing and duration of claims of the buyer's creditors, depending upon whether the goods are held by the buyer on approval or held on sale or return. Subdivision (3) concerns a different subject—certain circumstances under which a delivery of goods is deemed to be on sale or return.

Such is the purpose of the conclusive presumption in subdivision (3). (*Simmons First Nat. Bank, supra,* at p. 239.)

Similar application of this code provision by sister state courts is illustrative. In *In re KLP, Inc. Finance Co. of America* v. *Morris, supra,* 7 Bankr. 256, plaintiff deposited two pipe organs at lessor's warehouse pursuant to an oral agreement whereby lessor would be able to solicit sales of the organs with lessee's prior approval of the price. Lessor had traditionally sold organs from that warehouse. After lessor filed in bankruptcy, lessee sought to recover the organs. The trustee in bankruptcy contended that his claim to the organs was superior to that of the lessee. (*Id.,* at pp. 256-257.) The Bankruptcy Code endows trustees with the status of a lien creditor. (*Id.,* at p. 257.) The court found that the trustee's interest was superior to that of the lessee because the transaction satisfied the three prerequisites of subdivision (3), and was deemed to be a sale or return. (*Id.,* at pp. 257-258.)[5] Stating that the section is unique in that it applies to transactions which are not true sales at all, the *KLP* court applied section 2326, subdivision (3) to find a sale or return out of an oral lease.

In *Simmons First Nat. Bank* v. *Wells, supra,* 650 S.W.2d 236, Simmons made a loan to Western Rice Mills and received a security interest in all of Western's property. Wells had, in the past, sold rice to Western who would then mill and sell it. Later, after Western developed financial troubles, they agreed that Western would mill and then market the rice at an agreed minimum price. The milling charge would be deducted when Western sold the rice and Wells would receive the remainder. After Western defaulted on some loans, a receiver was appointed and both the receiver and Wells claimed ownership of the rice. (*Id.,* at p. 237.) The Supreme Court of Arkansas reversed the lower court's finding that the transaction was a bailment and that section 2326, subdivision (3) did not apply, stating "[w]hether the arrangement in this case was a bailment or a sale is not determinative of the rights of the parties . . . . [T]he question of whether [the Arkansas equivalent of section 2326, subdivision (3)] is applicable must still be answered." (*Id.,* at p. 238.) After strictly applying the three elements of subdivision (3), the *Simmons* court found that "[w]ith regard to the rights of creditors, it is irrelevant whether the transaction between the two parties was a bailment or a sale if the provisions of [section 2326, subdivi-

---

[5]The court found that the organs were "delivered for sale" under subdivision (3) because the oral agreement allowed the lessor to seek purchasers of the organs. (*Id.,* at p. 258.) Although here, there was no agreement between claimant and defendant requiring claimant's prior approval as there was in *KLP, Inc. Finance Co. of America,* there need not be such an agreement in order for section 2326, subdivision (3) to apply. (*First State Bank of Purdy, Mo.* v. *Miller* (Bankr.W.D.Ark. 1990) 119 Bankr. 660, 667.) The facts of the case before us, as determined *ante,* demonstrate the delivery of the BMW to defendant was a delivery "for sale" because defendant was not the final purchaser.

sion (3)] are also satisfied." (*Id.*, at p. 239.) Therefore, even were the facts to make out a bailment or a failed sale, if they also satisfy subdivision (3), the conclusive presumption is triggered.

The reasoning of *KLP* and *Simmons* is persuasive, and so the facts here require us to test the applicability of section 2326, subdivision (3). We hold, based on the undisputed facts in the record, analyzed *ante*, that this transaction must be deemed a sale or return with respect to the claims of plaintiff, the attaching creditor, because the elements of subdivision (3) are satisfied. This is so regardless of what type of transaction defendant and claimant intended between them and regardless of the fact that an intended sale failed.

At oral argument there was some concern expressed, should the conclusive presumption in section 2326, subdivision (3) be interpreted as we have, that it would operate to create sales or returns out of all transfers, not just out of consignments. The further concern was that this would then result in buyers returning goods, even when contracts do not provide such a right. In other words, it was suggested if the conclusive presumption described in *Escrow Connection* applied to all transfers, then there could never be a consignment from one dealer to another and all transactions would be considered final sales.

However, such concerns proceed from a misconception of the application of section 2326, subdivision (3) which does not necessarily apply to all dealer-to-dealer transactions. It is true that the intent of the parties is not relevant under this section. (*Fuller* v. *Texas Western Financial Corp., supra*, 635 S.W.2d at p. 789; *Limor Diamonds* v. *D'Oro By Christopher Michael, Inc., supra*, 558 F.Supp. at p. 711.) However, dealers, wholesalers and sellers, i.e. deliverers of goods in claimant's shoes may protect themselves from subdivision (3) by establishing either that (1) deliveree is generally known by his creditors to be substantially engaged in selling the goods of others; or (2) deliverer filed a financing statement under division 9; or (3) deliverer "used or bought [the goods] for personal, family, or household purposes." (§ 2326, subd. (3)(b)-(d); *Escrow Connection* v. *Haas, supra*, 189 Cal.App.3d at p. 1645, fn. 4.)[6]

Second, and more important, the conclusive presumption here defined becomes relevant only when a *creditor levies* upon goods in the possession of the person whose business is conducted in such a way as to satisfy the three

---

[6] The record here contains no financing statement and there is no evidence that defendant was generally known to be selling goods of others. Also, it is manifest that claimant did not purchase the car from Palm Springs for personal, family or household use. Therefore the transaction remains deemed a sale or return.

prerequisites noted. Section 2326, subdivision (3) states: "then with respect to *claims of creditors of the person conducting the business* the goods are deemed to be on sale or return . . . ." (Italics added.) The Uniform Commercial Code comment 2 addresses this point by saying that "the general policies of this Act . . . require good faith not only between the parties to the sales contract, but as against interested third parties . . . . [S]ubsection 3 resolves all reasonable doubts as to the nature of the transaction in favor of the general creditors of the buyer." The section only applies to determine the priority between an attaching creditor and a third party claimant. (§ 2326, subd. (3).)

White and Summers on the Uniform Commercial Code is illustrative of the policy designed to achieve this result: "We are not concerned in these cases with the rights between owners and [dealers] but with the rights of third parties. Rights of third parties may be affected by private agreements not available to them, but they should not be completely controlled by such terms. Courts should be principally concerned with the reasonable expectations of third parties. Determining the rights of third parties based on ostensible ownership rather than on actual ownership has long been a part of our law. This principle, expressed elsewhere in the Code, [fn. omitted.] should apply to these types of cases. We find this position particularly compelling because the owner can easily protect himself by filing a financing statement." (2 White & Summers, Uniform Commercial Code (3d ed. 1988) § 23-5, p. 265.)

Our holding here accords with that policy of protecting third party creditors by establishing that with respect to the interests of dealers' creditors, a transaction intended as a sale, but somehow incomplete or failed will be deemed a "sale or return" under section 2326 if the three prerequisites of subdivision (3) are met. Otherwise, the seller and dealer could easily evade the reach of the dealer's creditors by causing the sale to fail, such as by stopping payment on a check. In other words, the rights of the attaching creditor may still be "[d]etermin[ed] . . . based on ostensible ownership rather than on actual ownership [which] has long been a part of our law." (2 White & Summers, Uniform Commercial Code, *supra,* § 23-5, p. 265.)

Consequently, section 2511 does not govern the creditor's rights in this case. That section only dictates the respective rights of the buyer and seller, such as defendant and claimant here, but does not speak of the rights or interests of lien or attaching creditors. To mediate between the interests of a third party claimant and attaching creditor, resort must be made to section 2326, subdivision (3). " 'The purpose of [the subdivision (3) presumption] is "to protect the creditors of the person in possession of goods (the dealer [defendant here]) who would have a right to assume the goods were the

property of the dealer . . . ."'" (*Escrow Connection* v. *Haas, supra,* 189 Cal.App.3d at p. 1646, quoting *Logan Paving* v. *Massey-Ferguson Credit Corp.* (1984) 172 Ga.App. 368 [323 S.E.2d 259, 260-261].) Section 2326 paints a broad stroke when the interests of naive creditors are at stake and section 2511 cannot control here.

The effect of the section 2326, subdivision (3) conclusive presumption that the BMW was transferred to defendant as a sale-or-return item is that it is subject to attachment by defendant's creditors, such as plaintiff. Section 2326, subdivision (2) states that "goods held on sale or return are subject to such claims [of the buyer's creditors] while in the buyer's possession." In sum, as attaching creditor, plaintiff's right to the BMW is superior to that of claimant under section 2326 and the trial court erred as a matter of law in applying section 2511 under the facts of this case.

As a result, it is unnecessary for us to address the second of plaintiff's contentions.

### DISPOSITION

The trial court's order on third party claim is reversed with directions to enter a new and different order in favor of plaintiff, the attaching creditor.

Dabney, Acting P. J., and Timlin, J., concurred.

A petition for a rehearing was denied March 28, 1991, and respondent's petition for review by the Supreme Court was denied May 30, 1991.