ROBERT L. MARTIN, Plaintiff-Appellant, *v.* FIRST NATIONAL BANK OF JOLIET, Defendant-Appellee.

Third District No. 3—83—0795

Opinion filed September 6, 1984.

John T. Kelly, of Kallan and Kelly Law Offices, of Joliet, for appellant.

George F. Mahoney III and Raymond E. Meader, both of Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

This appeal arises from the alleged conversion of the proceeds from the sale of two automobiles owned by plaintiff Robert Martin. Robert Martin is a used-car dealer in Joliet, and consigned the two vehicles to Dixon-Kappel Motors, Inc., a car dealership that subsequently sold the automobiles to two consumers. After the automobiles were sold, Dixon-Kappel deposited the proceeds of the sale into its general checking account at the First National Bank of Joliet. Defendant First National Bank had a floor-plan security agreement with Dixon-Kappel, and Dixon-Kappel had failed to apply the proceeds of previous sales as required by the security agreement. As a result, on

the same day Dixon-Kappel sold the two automobiles belonging to Martin, the bank froze Dixon-Kappel's general checking account and applied the funds to offset debts owed to the bank by Dixon-Kappel and Kappel personally. Dixon-Kappel then issued two checks to plaintiff which were never presented for payment because Martin learned of the freeze on Dixon-Kappel's checking account.

Plaintiff sued for conversion, and after the close of plaintiff's case, the circuit court of Will County granted defendant's motion for a directed verdict in its favor.

On appeal, the plaintiff argues that both the Illinois Vehicle Code and the Uniform Commercial Code apply to the sales of the two autos and, therefore, Martin's interest in the proceeds took priority over the Bank's security interest. We agree with the trial court.

■ Plaintiff first contends that section 3—112 of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 3—112) applies and creates a security interest in a vehicle which can only be extinguished when the dealer relinquishes that title upon satisfaction of his lien. However, section 3—201 excepts certain liens and security interests, among which are:

> "(c) A security interest in a vehicle created by a manufacturer or dealer who holds the vehicle for sale, but a buyer in the ordinary course of trade from the manufacturer or dealer takes free of the security interest." (Ill. Rev. Stat. 1981, ch. 95½, par. 3—201.)

Therefore, any lien plaintiff may have had in the automobile itself was extinguished when the consumer buyers purchased the two vehicles from Dixon-Kappel in the ordinary course of business.

■ However, plaintiff does not seek to replevy the vehicles; he is seeking an interest in the proceeds of the sales only and, therefore, article 9 of the Commercial Code is the only applicable statute to plaintiff's suit. Plaintiff's argument is basically that the security interest created by the Illinois Vehicle Code by Martin's retention of the certificate of title to the two autos created a perfected security interest under article 9. The two autos were unquestionably consigned to Dixon-Kappel. Therefore, section 9—114 (Ill. Rev. Stat. 1981, ch. 26, par. 9—114) controls as to plaintiff's interest in the proceeds of the sales. Section 9—114 deals specifically with consignments and gives the consignor a priority over other secured creditors

> "who would have perfected security interest in the goods if they were the property of the consignee, and also has priority with respect to identifiable cash proceeds *** if
>
> (a) the consignor complies with the filing provisions of the

Article on Sales with respect to consignments (paragraph 3(c) of Section 2-326) before the consignee receives possession of the goods; and ***." (Ill. Rev. Stat. 1979, ch. 26, par. 9—114(1).)

The plaintiff must satisfy this and the remaining 3 subsections to gain a priority. Section 2—326(3)(c) provides:

"complies with the filing provisions of the Article on Secured Transactions (Article 9)." (Ill. Rev. Stat. 1981, ch. 26, par. 2—326(3)(c).)

The gist of the latter provision is that goods will be considered "for sale or return" unless subsections (3)(a)(b), or (c) are complied with. However, only (c) meets the requirements of section 9—114(1) and allows a consignor to receive priority treatment. The filing provisions of article 9, therefore, must be complied with. This certainly was not done in the instant case. Plaintiff relies upon a "security interest" created by the Illinois Vehicle Code to satisfy section 9—114(1). Section 9—114(1), as previously stated, is specific in its requirements, and plaintiff unquestionably filed no financing statement prior to delivery. Therefore, we must look to subsection (2) of 9—114 as the operable provision. Section 9—114(2) states:

"(2) In the case of a consignment which is not a security interest and in which the requirements of the preceding subsection have not been met, a person who delivers goods to another is subordinate to a person who would have a perfected security interest in the goods if they were the property of the debtor." (Ill. Rev. Stat. 1981, ch. 26, par. 9—114(2).)

We, therefore, conclude that the trial court properly granted judgment in favor of defendant and against the plaintiff, because plaintiff had a subordinate interest to the bank, because the filing provisions of article 9 were not complied with. We, therefore, affirm the decision of the Circuit Court of Will County.

Affirmed.

SCOTT and HEIPLE, JJ., concur.