### In re TRISTAR AUTOMOTIVE GROUP, INC., Debtor.

### Bankruptcy No. 92 B 20489.

United States Bankruptcy Court, S.D. New York.

June 10, 1992.

Neuman, Tamsen & Greher, Newburgh, N.Y., for Newburgh Auto Auction.

Stroock & Stroock & Lavan, New York City, for debtor.

## DECISION ON MOTION FOR RECONSIDERATION OF ORDER LIFTING STAY

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The Chapter 11 debtor, Tristar Automotive Group, Inc., has moved pursuant to Rule 9023 of the Federal Rules of Bankruptcy Procedure and Local Rule 13(j) for reconsideration of this court's decision, dated May 15, 1992, which granted relief from the automatic stay in favor of Newburgh Auto Auction ("Newburgh").

## FACTUAL BACKGROUND

The debtor is an automobile dealer in Westchester County, New York, which filed a voluntary petition for reorganizational relief under Chapter 11 of the Bankruptcy Code on March 13, 1992 and continues in business as a debtor in possession, exercising the powers of a trustee in bankruptcy in accordance with 11 U.S.C. §§ 1107 and 1108.

On February 27, 1992, several weeks before the debtor filed its Chapter 11 petition with this court, it bought eight used Mitsubishi automobiles at auction from Newburgh. The title documents for the automobiles were retained by Newburgh. The debtor gave Newburgh eight checks, one for each vehicle, with the understanding that if the debtor sold an automobile to a customer within forty-five days, Newburgh could then deposit the check for that automobile. Newburgh could also deposit the checks at the end of the forty-five days for any automobile then remaining unsold. Upon depositing a check, Newburgh was to forward the title document for the automobile in question to the debtor so that the debtor could arrange to have a title document issued to the customer.

As of the petition date, the debtor had not sold any of the automobiles and Newburgh had not deposited any checks. After the petition date, the debtor was unable to sell any of the automobiles because Newburgh refused to deliver title documents.

At the hearing on May 15, 1992, Newburgh did not offer any evidence that it perfected its security interest in the vehicles by complying with applicable filing requirements. Instead, Newburgh relied on the fact that it retained the title documents for the automobiles and that as owner of the vehicles it should be permitted to pursue its claims to recover the automobiles in state court. Having satisfied the court that it retained title to the vehicles, Newburgh was allowed to proceed in state court to assert its ownership rights.

The debtor argues that Newburgh is an unpaid unsecured creditor and that Newburgh did not satisfy its burden of proof to support granting it relief from the automatic stay.

## DISCUSSION

■ Because "there is no written agreement establishing, or even describing, the parties' relationship ..., the existence and terms of the agreement between the par-

ties must be defined by their conduct." *In re Waning,* 120 B.R. 607, 613 (Bankr.D.Me. 1990) (citing 17 Am.Jur.2d, *Contracts,* § 3 (1964)). The debtor suggests that the agreement between the parties for Newburgh to retain title to the automobiles until payment was made should be governed by N.Y.U.C.C. § 2–401, which provides in relevant part as follows:

> Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest.

N.Y.U.C.C. § 2–401(1) (McKinney 1964). However, there are other sections of the New York Uniform Commercial Code which have more specific application to the facts in this case.

Section 9–114(2) governs consignments and provides that if the filing requirements of section 2–326 must be met and are, in fact, not met, "a person who delivers goods to another is subordinate to a person who would have a perfected security interest in the goods if they were the property of the debtor." N.Y.U.C.C. § 9–114(2) (McKinney 1990). Thus, a debtor in possession, exercising the powers of a trustee in bankruptcy pursuant to 11 U.S.C. § 1107, may assert the so-called strong-arm avoiding powers under 11 U.S.C. § 544(a) and set aside an unperfected security interest.

Section 2–326, which is incorporated in N.Y.U.C.C. § 9–114, is expressly made inapplicable to situations where the consignor, or person making the delivery, establishes that the consignee, or person conducting the business "is generally known by his creditors, to be substantially engaged in selling the goods *of others...*." N.Y.U.C.C. § 2–326(3)(b) (McKinney 1964) (emphasis added). This point is expressed as follows:

> (3) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subsection are applicable even though an agreement purports to reserve title to the person making delivery until payment or resale or uses such words as "on consignment" or "on memorandum". However, this subsection is *not applicable* if the person making delivery

> > (a) complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or

> > (b) *establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others,* or

> > (c) complies with the filing provisions of the Article on Secured Transactions (Article 9).

N.Y.U.C.C. § 2–326(3) (emphasis added).

In the instant case, Newburgh offered no proof that the debtor was "substantially engaged" in selling used automobiles of others, nor did it show that the debtor's creditors generally knew that the debtor was substantially engaged in selling used automobiles of others. Therefore, because New York does not have any law requiring consignees to post signs, as excepted under section 2–326(3)(a), Newburgh was required to comply with the filing provisions of N.Y.U.C.C. Article 9, as stated in section 2–326(3)(c). *See In re State Street Auto Sales, Inc.,* 81 B.R. 215, 218 (Bankr. D.Mass.1988) ("Car Barn has not met its burden of establishing that any of the exceptions under § 2–326(3) apply.... The Debtor was not substantially engaged in the business of selling consigned vehicles, much less 'generally known' by its creditors to be doing so."). *See also Marrs d/b/a Nacogdoches Auto Auction v. Southern Texas National Bank,* 686 S.W.2d 675, 679–80 (1985) ("Since the ... transaction between Lerma and Marrs was a consignment as contemplated by Section 9.114, and Marrs did not comply with Section 2.326(c)(3), his claim is subordinate to that of Bank.") (applying same version of section 2–326); *Martin v. First National Bank of Joliet,* 127 Ill.App.3d 485, 468

N.E.2d 1002, 82 Ill.Dec. 348 (1984) (applying same version of section 2–326).

 Accordingly, Newburgh did not establish that it had a perfected security interest in the automobiles in question, with the result that it must be regarded as an unsecured unpaid general creditor and is no more entitled to relief from the automatic stay than any other unsecured general creditor. An unsecured creditor would not be entitled to relief from the automatic stay unless it can establish extraordinary circumstances. *In re Sonnax Industries, Inc.,* 99 B.R. 591, 595 (D.Vt.1989), *aff'd,* 907 F.2d 1280, 1287 (2d Cir.1990) ("We therefore agree with the district court that the bankruptcy proceeding provides a single, expeditious forum for resolution of the disputed issues between Sonnax and Tri Component."); *In re Pioneer Commercial Funding Corp.,* 114 B.R. 45, 47 (Bankr. S.D.N.Y.1990). No unusual or extraordinary circumstances were demonstrated by Newburgh to justify granting relief from the stay. The fact that Newburgh retained the title documents for the automobiles in question did not prevent the vehicles from becoming property of the estate within the meaning of 11 U.S.C. § 541. Therefore, the debtor is correct in advancing the argument that the stay should not have been lifted without proof that Newburgh perfected its retained interest in the automobiles by complying with the appropriate filing requirements.

In view of the fact that Newburgh now admits that it did not comply with the N.Y.U.C.C. filing requirements, it follows that Newburgh's motion for relief from the stay should be denied.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(G).

2. The debtor's motion for reconsideration of this court's decision granting Newburgh relief from the stay is granted.

3. Upon reconsideration, it is concluded that Newburgh failed to establish that it holds a perfected security interest in the eight automobiles which it sold to the debtor.

4. Newburgh's motion for relief from the automatic stay is denied because Newburgh has failed to establish that its pre-petition sale of eight automobiles to the debtor is excepted from the N.Y.U.C.C. filing requirements or that Newburgh has complied with such filing requirements.

SETTLE ORDER on notice.