Opinion
 

 McDONALD, J.
 

 In this case we determine the relative priority of the claims of the Bank of California (Bank) and Jay Fisher Farms, Inc. (Grower) to approximately $139,000 in a bank account (Fund) of Thornton-Blue Pacific, Inc. (Thornton). The trial court held the Bank was entitled to the Fund because a security agreement and a UCC-1 financing statement filed
 
 *844
 
 with the California Secretary of State created a perfected security interest in the Fund in favor of Bank prior to the claim of Grower. Grower contends, inter alia, that neither the source of the Fund nor the Fund was ever owned by Thornton and therefore no security interest in the Fund was created by the security agreement or perfected by the financing statement between Thornton and Bank.
 

 Factual and Procedural Background
 

 Because of a limited appellate record the background of this case is not free of uncertainty. It appears that Bank made a $600,000 loan to the three shareholders of Thornton. Thornton guaranteed the loan. Apparently to secure the guarantee Thornton and Bank entered into a security agreement granting Bank a security interest in certain assets of Thornton. The security interest was perfected by the filing of a financing statement with the Secretary of State. The shareholders defaulted on the loan and Bank filed an action against the shareholders and Thornton, presumably to collect the balance owing on the loan. Thornton then filed a cross-complaint against Grower and others, the purpose of which is not shown in the record.
 

 Bank and Thornton negotiated a settlement pursuant to which cash received by Thornton in connection with its business was delivered to Bank as payment on the loan and in satisfaction of the guarantee. Grower and others in the same position as Grower then asserted claims to that cash and further asserted that their claims had priority over the claim of Bank. The court approved the settlement subject to resolution of the claims of Grower and others and then ordered approximately $139,000 of Thornton’s cash receipts placed in a “blocked” account (referred to in this opinion as the Fund) pending resolution of the competing claims. The court set an evidentiary hearing to resolve the claim priority dispute.
 
 [1]
 

 The evidentiary hearing was conducted by declarations submitted by the parties. The nature of the relationship between Grower and Thornton was established without contradiction: Grower raised flowers. Thornton was a flower “wholesaler.” Grower delivered flowers to Thornton for which a delivery receipt was given. Thornton marked the flowers with the name of Grower, packaged the flowers and then sought to sell them to retail florists. The price and terms of sale were determined by Thornton. If the flowers were sold and Thornton received payment, it remitted to Grower 75 percent of the sales price it received and retained 25 percent as its “commission.” If
 
 *845
 
 the flowers were not sold or were rejected by the buyer or were otherwise discarded, Grower received nothing. Thornton incurred no risk other than its cost of doing business. It was also established without contradiction that until after the default of the loan Bank had no actual knowledge of the nature of the relationship between Thornton and Grower.
 

 Following the evidentiary hearing, the trial court determined that Bank held a first priority claim to the Fund and ordered the Fund released to Bank. Following issuance of the order, Bank and Thornton completed settlement of the dispute between them, and Bank’s complaint was dismissed. The record does not disclose the resolution of the cross-complaint filed by Thornton against Grower. Grower appeals the order releasing the Fund to Bank.
 

 Discussion
 

 I
 

 Appealability
 

 Bank contends Grower’s appeal should be dismissed. It argues the order from which the appeal is taken is not an appealable order because there was no final judgment in this case. Therefore, Bank argues, Code of Civil Procedure section 904.1, subdivision (a)(1) does not authorize the appeal. It further argues that none of the other subdivisions of Code of Civil Procedure section 904.1, subdivision (a) are applicable to permit appeal from the order.
 

 Code of Civil Procedure section 904.1, subdivision (a) codifies the “one final judgment rule” that an appeal is available only from a final judgment. (See generally, Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs 1 (The Rutter Group 1996) ¶¶2:21, 2:22, pp. 2-13 to 2-14; Cal. Appellate Practice Handbook (5th ed. 1995) §§1.1 to 1.4, p. 1.)
 

 Although Bank correctly asserts that no final judgment was entered in the action commenced by the filing of its complaint against Thornton, the order from which the appeal is taken may be considered in legal effect a final judgment for purposes of appeal. As stated in
 
 Joyce
 
 v.
 
 Black
 
 (1990) 217 Cal.App.3d 318, 321 [266 Cal.Rptr. 8], the “. . . order has all the earmarks of a final judgment.” There remains nothing for judicial consideration with regard to the priority of claims to the Fund; the order is the only judicial ruling with regard to the Fund; and there is no other opportunity to review the order by appeal.
 
 (Id.
 
 at p. 321; see generally, Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs 1,
 
 supra,
 
 ¶¶2:36-2:38, 2:43.1, pp. 2-17 to 2-18, 2-23 to 2-24.) Under these circumstances the order from which
 
 *846
 
 the appeal is taken is an appealable order because, in effect, it is a final judgment.
 
 [2]
 

 II
 

 Terms of Security Agreement and Financing Statement
 

 The UCC-1 financing statement between Bank and Thornton describes the collateral subject to the Bank’s security interest as: “All inventory . . . used ... in [Thornton’s] business now owned or hereafter acquired; and all accounts . . . and rights to payment of every kind now or hereafter arising in favor of [Thornton] out of [Thornton’s] business, . . .” Grower contends this description of the collateral does not include the Fund and therefore the security agreement and financing statement did not create a security interest in the Fund.
 

 Upon delivery of Grower’s flowers to Thornton the flowers became “inventory” of Thornton because they were held by Thornton for sale. (See Cal. U. Com. Code,
 
 [3]
 
 § 9109.) For purposes of this appeal, we assume the Fund consists of the “proceeds” of this inventory.
 
 [4]
 
 (See § 9306, subd. (1).) Although the term “proceeds of inventory” is not included in the financing statement description of the collateral, the word “inventory” includes the
 
 *847
 
 proceeds from the sale of inventory. Section 9306, subdivision (2) provides in part that “. . . a security interest continues ... in any identifiable proceeds including collections received by the debtor[,]” and section 9203, subdivision (3) provides in part that “. . . a security agreement gives the secured party the rights to proceeds provided by [s]ection 9306.” As stated in Secured Transactions,
 
 supra,
 
 section 4.55 at page 232, “[t]he present version of the Commercial Code does not require that the financing statement specifically claim the right to proceeds if that right is to be asserted.”
 

 We conclude that the description of the collateral in the security agreement and financing statement included the Fund because the Fund consisted of proceeds of inventory and inventory was included in the described collateral. The description of the collateral was sufficient to give notice to Grower that receipts from the sale by Thornton of Grower’s flowers were subject to Bank’s claimed security interest.
 

 III
 

 Consignment Sale
 

 Grower contends the sale of flowers by Grower to Thornton was a consignment sale; as a result, Thornton never had title to the flowers and Thornton never owned the collateral (inventory) to which Bank’s security interest could attach. Grower further contends the exception to this principle set forth in section 2326, subdivision (3) is inapplicable to this case.
 

 A
 

 A consignment sale is one in which the merchant takes possession of goods and holds them for sale with the obligation to pay the owner for the goods from the proceeds of a sale by the merchant. If the merchant does not sell the goods the merchant may return the goods to the owner without obligation. (See Secured Transactions,
 
 supra,
 
 § 1.18, pp. 21, 22.) In a consignment sale transaction, title to the goods generally remains with the original owner. (See U. Com. Code com., Prior Cal. Law, § 3, 23A West’s Ann. Cal. Com. Code (1964 ed.) § 2326, p. 345.) The arrangement between Grower and Thornton was a consignment sale arrangement; Grower was the consignor and Thornton the consignee.
 

 Whatever the respective rights between the consignor and the creditors of the consignee may have been prior to 1963, the adoption of section 2326 established new rules which, under specified circumstances, made the retention of title by the consignor irrelevant to resolving claims between the
 
 *848
 
 consignor and the creditors of the consignee. Section 2326, subdivision (3) provides in part:
 

 “(3) Where goods are delivered to a person for sale and the person maintains a place of business at which he or she deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return. The provisions of this subdivision are applicable even though an agreement purports to reserve title to the person making the delivery until payment or resale or uses such words as ‘on consignment’ .... However, this subdivision is not applicable if the person making delivery does any of the following:
 

 “(b) Establishes that the person conducting the business is generally known by his or her creditors to be substantially engaged in selling the goods of others ....
 

 “(c) Complies with the filing provisions of the division on secured transactions (Division 9).
 

 “(d) Delivers goods which the person making delivery used or bought for use for personal, family, or household purposes.” The effect of a consignment arrangement being deemed on sale or return is that “. . . goods held on sale or return are subject to . . . [the claims of the consignee’s creditors] while in the [consignee’s] possession.” (§ 2326, subd. (2).)
 

 If section 2326, subdivision (3) is applicable to the arrangement between Grower and Thornton, then the retention by Grower of title to the collateral is irrelevant to the ability of Bank to obtain a security interest in the collateral.
 
 [5]
 
 (See
 
 Minor
 
 v.
 
 Stevenson
 
 (1991) 227 Cal.App.3d 1613, 1619 [278 Cal.Rptr. 558];
 
 Escrow Connection
 
 v.
 
 Haas
 
 (1987) 189 Cal.App.3d 1640, 1644 [235 Cal.Rptr. 200].)
 

 
 *849
 
 B
 

 Grower does not contend that it complied with the filing provisions of division 9 or that the delivered goods were used by Grower for personal, family or household purposes or that its arrangement with Thornton was not otherwise within the arrangement described by section 2326, subdivision (3). Grower contends section 2326, subdivision (3) is inapplicable to this case because at the evidentiary hearing Grower established that Thornton was generally known by its creditors to be substantially engaged in the business of selling the goods of others—the section 2326, subdivision (3)(b) exception to applicability of section 2326, subdivision (3).
 

 At the evidentiary hearing the declarations of two Bank officials stated the Bank was unaware that Thornton was selling the goods of others. The declarations of three flower growers who had consignment arrangements with Thornton stated that Thornton was “well-known as a commission selling agent.” There was no other evidence on this issue. Based on this evidence the trial court found there was insufficient evidence to establish that Thornton was “generally known by [its] creditors to be substantially engaged in selling the goods of others” within the meaning of section 2326, subdivision (3)(b).
 

 The finding of the trial court is a finding of fact which will not be disturbed on appeal unless on review of the entire record it is unsupported by substantial evidence.
 
 (Bowers
 
 v.
 
 Bernards
 
 (1984) 150 Cal.App.3d 870, 872-874 [197 Cal.Rptr. 925].) It is true that all of the flower consignors to Thornton, among whom was Grower, were also creditors of Thornton between the time Thornton sold their flowers and the time Thornton paid them 75 percent of the sale price received by Thornton. It is also true that these consignor creditors knew that Thornton substantially engaged in the business of selling goods of others. However, the knowledge of the consignors cannot necessarily be extrapolated into a fact “generally known by its creditors.” The purpose of section 2326, subdivision (3) is to protect general creditors of the consignee from the claims of consignors having undisclosed consignment arrangements with the consignee. Those general creditors do not need the protection of section 2326, subdivision (3) if they know the debtor
 
 *850
 
 substantially engages in the business of selling goods to others; with that knowledge they can take steps to protect themselves. However, consignors who are also creditors are not within the category of creditors protected by section 2326, subdivision (3); they, of course, know of the consignment arrangement. To impute as a matter of law the knowledge of the consignors who may also be creditors to general creditors does not further the purpose of section 2326, subdivision (3) because the knowledge of consignor creditors does not give general creditors the opportunity to protect themselves from the undisclosed consignment arrangement. Rather, establishment of the section 2326, subdivision (3)(b) creditor knowledge exception to the applicability of section 2326, subdivision (3) is a question of fact to be determined by the trial court. Evidence of the knowledge of consignor creditors may be relevant but is not conclusive. In this case there was no evidence of the knowledge of creditors other than the consignors. We conclude there is substantial evidence to support the trial court’s finding that Thornton was not generally known by its creditors to be substantially engaged in the business of selling goods of others.
 
 [6]
 

 C
 

 Grower contends that even if section 2326, subdivision (3) were otherwise applicable, Bank’s claim is prior to Grower’s claim only to the flowers in Thornton’s possession, and that section 2326, subdivision (2) applies only to “goods” in the “possession” of Thornton and not to the proceeds received upon sale of those goods; the Bank, it is argued, therefore has no prior claim to the Fund by reason of section 2326, subdivision (3).
 

 The parties have not cited, and we are not aware of, any California cases which address this issue. Grower relies on the Oregon Supreme Court case of
 
 Belmont Intern,
 
 v.
 
 American Intern. Shoe, supra,
 
 831 P.2d 15 to support its contention. Grower correctly notes that the
 
 Belmont
 
 court stated at page 17 that the Oregon statute comparable to section 2326, subdivision (3) does not apply to the proceeds from the sale of consigned goods but only to claims to the goods themselves when in the possession of the consignee. However, in
 
 Belmont
 
 the court determined the section 2326, subdivision (3) priority protection was inapplicable because the creditor had actual knowledge of the
 
 *851
 
 consignment arrangement which established the section 2326, subdivision (3)(b) creditor knowledge exception to the applicability of section 2326, subdivision (3); therefore, the consignor held a claim prior to the consignee’s creditor. It was thus unnecessary to the decision to state that section 2326, subdivision (3) does not apply to proceeds for the sale of goods because the court held in the circumstances of that case section 2326, subdivision (3) did not apply to the goods themselves.
 
 (Belmont Intern., supra,
 
 at p. 20.)
 

 Contrary to
 
 Belmont
 
 is
 
 GBS Meat Industry Pty. Ltd.
 
 v.
 
 Kress-Dobkin Co., supra,
 
 474 F.Supp. 1357, in which it is stated at page 1362: “. . . [section 2326, subdivision (3)] gives priority to secured creditors . . . over consignors .. . when each makes a claim to consigned goods
 
 or the proceeds from the sale of such goods
 
 . . . .” (Italics added.) However, as in
 
 Belmont,
 
 the
 
 GBS Meat Industry
 
 court found the secured creditor of the consignee was aware of the consignment arrangement and therefore section 2326, subdivision (3) was not applicable because of the section 2326, subdivision (3)(b) creditor knowledge exception to the applicability of section 2326, subdivision (3). As in
 
 Belmont,
 
 the language in
 
 GBS Meat Industry Pty. Ltd.
 
 regarding the applicability of section 2326, subdivision (3) to “proceeds” is unnecessary to the decision.
 

 Also contrary to
 
 Belmont
 
 and holding directly that a secured creditor of the consignee has priority over the claim of the consignor to the sale proceeds of the consigned goods is the Illinois case of
 
 Martin
 
 v.
 
 First Nat. Bank of Joliet
 
 (1984) 127 Ill.App.3d 485 [82 Ill.Dec. 348, 468 N.E.2d 1002]. In
 
 Martin
 
 the court noted at page 1003 that, as here, the consignor had not complied with the filing provisions of the division of the Uniform Commercial Code on secured transactions (div. 9) and therefore under the Illinois statute comparable to section 9114, subdivision (2), “[i]n the case of a consignment... a person who delivers goods to another is subordinate to a person who would have a perfected security interest in the goods if they were the property of the debtor.” The
 
 Martin
 
 court applied this priority rule to the proceeds of the sale of consigned goods without discussion of the section 2326 issue raised in this case by Bank. (See also
 
 Sterling Boat Co.
 
 v.
 
 Arizona Marine, Inc.
 
 (1982) 134 Ariz. 55 [653 P.2d 703, 706].)
 

 In our view the language of
 
 GBS Meat Industry Pty. Ltd.
 
 quoted above and the result in
 
 Martin
 
 are correct and we disagree with the contrary language in
 
 Belmont.
 

 [7]
 

 Bank had a perfected security interest prior to Grower in the flowers delivered to Thornton by Grower and under section 2326, subdivisions (2) and (3) Bank retained that security interest in the flowers during the
 
 *852
 
 time Thornton retained possession of the flowers. The
 
 Belmont
 
 decision is consistent with this conclusion. At the time Thornton sold the flowers, Bank’s security interest in the flowers, and any claim of Grower to the flowers, terminated. (§ 9307; see generally, Secured Transactions,
 
 supra,
 
 § 4.9 et seq., p. 188 et seq.) However, termination of Bank’s security interest in the flowers did not result in Bank’s no longer holding a security interest in anything; rather, the sale of the flowers and termination of the security interest in the flowers resulted in Bank’s holding a security interest in the proceeds of the sale of the flowers under section 9306, subdivision (2). (See Discussion, pt. II,
 
 ante.)
 
 The
 
 Belmont
 
 decision on which Grower relies did not consider the Commercial Code provisions relating to imposition of the security interest to the proceeds of the sale of the goods; in our view the
 
 Belmont
 
 analysis is therefore incomplete. We discern no reason the proceeds of inventory provisions of the Commercial Code should not be applicable when the priority of a secured claim is first established in the inventory by section 2326, subdivision (3). We conclude that sections 9203 and 9306 are applicable to this case and that as a result Bank holds a security interest in the Fund prior to any claim of Grower.
 
 [8]
 

 
 *853
 
 Disposition
 

 The order of the trial court is affirmed.
 

 Benke, Acting P. J., and Haller, J., concurred.
 

 [1]
 

 At the time of the evidentiary hearing numerous parties in the same position as Grower appeared and claimed a priority interest in the Fund. However, only Grower has appealed the order of the trial court.
 

 [2]
 

 Because we determine the order from which the appeal is taken is an appealable order as, in effect, a final judgment, it is unnecessary to determine whether the order is also appealable as a final order on a collateral matter directing the payment of money. (See
 
 Bauguess
 
 v.
 
 Paine
 
 (1978) 22 Cal.Sd 626, 634, fn. 3 [150 Cal.Rptr. 461, 586 P.2d 942]; Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs 1,
 
 supra,
 
 ¶¶2:77-2:80, pp. 2-35 to 2-38.) The rule permitting an appeal from a final order on a collateral matter generally requires that the order “. . . must direct the payment of money by appellant or the performance of an act by or against him.”
 
 (Sjoberg
 
 v.
 
 Hastorf
 
 (1948) 33 Cal.2d 116, 119 [199 P.2d 668].) In this case the order directed the payment of money in the Fund, but it did not direct the payment of money by Grower. However, authority also exists that an order which “has the effect of a final determination of property rights [citations]”
 
 (Stockton
 
 v.
 
 Rattner
 
 (1972) 22 Cal.App.3d 965, 968 [99 Cal.Rptr. 787], italics omitted) is appealable although no final judgment has been entered. In this case the order from which the appeal is taken had the effect of a final determination of the rights of the parties to the Fund. Whether
 
 Stockton
 
 is analyzed as an appealable order on a collateral matter or an appealable order because, in effect, it is a final judgment with respect to rights in the Fund is perhaps of academic interest. However, under either analysis the order is an appealable order.
 

 [3]
 

 All statutory references are to the California Uniform Commercial Code unless otherwise specified.
 

 [4]
 

 Actually the Fund consists of second generation proceeds: proceeds of proceeds. Upon sale of the flowers the proceeds consisted of an account receivable owing to Thornton by the buyer of the flowers which is an “account” (§ 9106). When payment of the account was received by Thornton and placed in the Fund, the money was cash proceeds of the account. The term “proceeds” includes proceeds of proceeds. (§ 9306, subd. (1); see generally, Secured Transactions in California Commercial Law Practice (Cont.Ed.Bar 1986) § 4.54, p. 230 (hereafter Secured Transactions).)
 

 [5]
 

 See also section 9114, which provides in part:
 

 “(1) A person who delivers goods under a consignment. . . and who would be required to file under this division by paragraph (3)(c) of [s]ection 2326 has priority over a secured party who is or becomes a creditor of the consignee and who would have a perfected security interest in the goods if they were the property of the consignee, and also has priority with respect to identifiable cash proceeds received on or before delivery of the goods to a buyer, if “(a) [t]he consignor complies with the filing provision of the division on sales with respect to consignments (paragraph (3)(c) of [s]ection 2326) before the consignee receives possession of the goods ....
 

 ..
 

 “(2) In the case of a consignment ... in which the requirements of the preceding subdivision have not been met, a person who delivers goods to another is subordinate to a person who would have a perfected security interest in the goods if they were the property of the debtor.”
 
 *849
 
 Because Grower did not comply with filing provisions of the division on sales with respect to consignments, section 9114, subdivision (2) provides that the interest of the consignor is subordinate to Bank’s perfected security interest in the goods even though the consignee (Thornton) did not have title to the goods.
 

 For a discussion of the relationship between section 2326 and section 9114 see California Commercial Law: I (Cont.Ed.Bar 1966) sections 14.29 to 14.31, pages 647 to 650,
 
 id.
 
 (Cont.Ed.Bar Supp. 1992) section 14.29, page 84; Secured Transactions,
 
 supra,
 
 sections 1.18, 1.19, pages 21 to 24.
 

 [6]
 

 We note that some courts have refused to apply the priority protection of section 2326, subdivision (3) to a creditor with actual knowledge of the consignment arrangement even if there is no showing that the consignee’s business is generally known by its creditors to be substantially engaged in the selling of goods of others. (See
 
 Belmont Intern,
 
 v.
 
 American Intern. Shoe
 
 (1992) 313 Or. 112 [831 P.2d 15, 19];
 
 GBS Meat Industry Pty. Ltd.
 
 v.
 
 KresDobkin
 
 Co. (W.D.Pa. 1979) 474 F.Supp. 1357, 1362, 1363, affd. 622 F.2d 578 (3d Cir. 1980).) In this case there was substantial uncontradicted evidence that Bank was unaware of the consignment arrangement between Grower and Thornton.
 

 [7]
 

 Although we agree with the result in
 
 Martin,
 
 we do not necessarily agree with its analysis.
 
 Martin
 
 seems to rely exclusively on the provisions of the Illinois statute comparable to section 9114. In
 
 Martin,
 
 continuation of the creditor’s security interest to the proceeds of the sale of
 
 *852
 
 inventory appears to be based on the provisions of the Illinois statute comparable to section 9114, subdivision (1), which in
 
 Martin
 
 is quoted at page 1003 of 468 N.E.2d as providing in part: “ ‘[A secured creditor] would have [a] perfected security interest in the goods if they were the property of the consignee
 
 and also has priority with respect to identifiable cash proceeds. . .
 
 .’” (Italics added.) However, this subdivision (1) provides for a priority claim of the consignor, not the secured creditor of the consignee, and the language quoted above omits the balance of the sentence providing: “received on or before delivery of the goods to a buyer.” (§ 9114, subd. (1); see fn. 5,
 
 ante.)
 
 We therefore do not agree that the provisions of section 9114, subdivision (1) resolve the issue of the priority of claims of the consignee’s secured creditor to the proceeds of inventory.
 

 Indeed, the Uniform Commercial Code comment to section 9114 appears to interpret section 9114 to provide that the consignor becomes a general creditor of the consignee upon sale of inventory and has no priority claim to the proceeds of sale of inventory. That comment states in part: “Except in the limited cases of identifiable cash proceeds received on or before delivery of the goods to a buyer, no attempt has been made to provide rules as to perfection of a claim to proceeds of consignments (compare [§] 9-306) or the priority thereof (compare [§] 9-312). It is believed that under many true consignments the consignor acquires a claim for an agreed amount against the consignee at the moment of sale, and does not look to the proceeds of sale. . . .
 
 [I]f
 
 consignors intend to claim the proceeds of sale, they will do so by expressly contracting for them and will perfect their security interests therein.” (U. Com. Code com., 23C West’s Ann. Cal. U. Com. Code (1990 ed.) § 9114, p. 366.) Contrary to the substance of this comment is the holding in
 
 Sterling Boat Co.
 
 v.
 
 Arizona Marine, Inc., supra,
 
 653 P.2d 703 that the purchase money security interest of the consignor in the goods attaches to the proceeds of sale of the goods. However, if the comment is accepted as the correct interpretation and expressed intent of the Commercial Code, it appears that Grower has no interest at all in the Fund other than as a general creditor of Thornton.
 

 [8]
 

 Grower contends that in some unspecified manner the provisions of the Food and Agriculture Code which regulate “Commission Merchants” (Food & Agr. Code, § 56271 et seq.) provide that the claim of Grower to the Fund is prior to the claim of Bank. We agree that
 
 *853
 
 Thornton was a commission merchant (Food & Agr. Code, § 56105) and that the Legislature has chosen to enact a program of regulation of commission merchants. The regulatory program includes requirements for recordkeeping and payments to consignors of farm products and provides penalties for not complying with the program. However, even assuming Thornton did not comply with the regulatory program, and therefore may be subject to the imposition of penalties, nothing in the regulatory program is relevant to the issue of the relative priority of claims to the Fund.