Filed 7/25/16  Bajan v. Mikos CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MATTHEW BAJAN, JR., et al., | D068314 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2008-00094754-CU-FR-CTL) |
| JAN MIKOS, et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of San Diego County, Richard E. L. Strauss, Judge.  Affirmed.

Jan Mikos and Halina Mikos, in pro. per., for Defendants and Appellants.

Grunsky, Ebey, Farrar & Howell, Thomas N. Griffin and Frederick H. Ebey, for Plaintiffs and Respondents.

Matthew Bajan, Jr. and Boguslaw Bajan filed a lawsuit against Jan and Halina Mikos.  The parties later entered into a settlement agreement in which the Bajans agreed to dismiss the lawsuit in exchange for the Mikoses transferring their home to the Bajans, subject to the Mikoses retaining a life estate in the property.

The sole issue on appeal concerns the court's order appointing an elisor to sign deeds implementing this settlement agreement. The Mikoses contend the order must be reversed because the deeds are inconsistent with the Settlement Agreement. They also contend the court erred in granting the motion on an ex parte basis and denying their continuance request. These contentions are without merit and we affirm.

FACTUAL AND PROCEDURAL BACKGROUND[1]

The Bajans (two adult brothers) sued the Mikoses and the representatives of Henry Lisowski's trust and estate. In their lawsuit, the Bajans alleged the Mikoses and Lisowski engaged in wrongful conduct (including fraud and forgery) pertaining to their father's will and estate assets. The Bajans also alleged these parties were responsible for their father's death. Lisowski later committed suicide.

On October 4, 2011, numerous parties who had claims against the Lisowski estate and against the Mikoses engaged in a global mediation of all claims asserted in the various lawsuits, including the Bajans' claims. At the end of the day, all parties agreed to a comprehensive multi-party written settlement agreement (Settlement Agreement). The Settlement Agreement provided it was a final resolution of all disputes and controversies between and among the parties. The Bajans and Mikoses were each represented by counsel.

---

[1]     We summarize only the facts relevant to the appellate issues before us. A more detailed discussion of the facts is contained in our prior unpublished opinion, *Bajan v. Mikos* (Mar. 19, 2013, D061380) (*Bajan I*).

2

Under the settlement terms, the Bajans agreed to release their claims against the Mikoses in exchange for the Mikoses transferring their home (the Property) into an irrevocable trust which provided the Mikoses with a life estate with the remainder to the Bajans upon the death of both Mikoses.[2]  The parties also "agree[d] to execute any documents necessary to accomplish" this property transfer.  The Mikoses signed the agreement, as did Matthew Bajan on behalf of himself and his brother Boguslaw (who lives in Poland) under a power of attorney.

About two weeks later, the Mikoses stated their intent to revoke or rescind their consent to the Settlement Agreement.  They claimed their consent resulted from "undue influence and mistake" and that they did not understand the alternatives and consequences of the settlement before signing the agreement.

In response, the Bajans filed a motion requesting the court enter judgment on, and enforce, the Settlement Agreement.  (Code Civ. Proc., § 664.6 (§ 664.6).)  The Mikoses opposed the motion on several grounds, including that the agreement was not enforceable under section 664.6 because one of the brothers (Boguslaw) did not personally sign the Settlement Agreement and because the agreement was the product of undue influence,

---

[2]     Specifically, the agreement stated:  "Within 10 days of the court order approving the Settlement, Jan and Halina Mikos will transfer ownership in the [Property] to an irrevocable trust (to be known as the 'Jan and Halina Mikos Irrevocable Trust') or otherwise so as not to trigger reassessment of property taxes, said trust or other transfer to be drafted by the attorney for the Bajan Plaintiffs and subject to the approval of Jan and Halina Mikos, the terms of which trust or other transfer shall include a life estate in favor of Jan and Halina Mikos and distribution of the property after the deaths of both Jan and Halina Mikos to the Bajan Plaintiffs."

3

economic duress, and mistake of fact. After an evidentiary hearing, the court rejected these contentions, granted the section 664.6 motion, and entered judgment on the Settlement Agreement.

This court reversed the judgment on appeal. (*Bajan I, supra*, D061380.) We held that parties are not entitled to use the expedited section 664.6 procedure to enforce a settlement agreement unless all parties personally signed the agreement, and that a signature by an authorized agent does not meet this test. (See *Levy v. Superior Court* (1995) 10 Cal.4th 578, 585; *Gauss v. GAF Corp.* (2002) 103 Cal.App.4th 1110, 1122.) We stated, however, that this conclusion meant "only that the settlement agreement is not enforceable through the expedited section 664.6 procedure. It does not preclude the enforcement of the written settlement agreement through other procedural means, including an amendment of the pleadings or an independent breach of contract action." (*Bajan I, supra*, D061380, at p. *2.)

On remand, the Bajans moved to amend the complaint to add a cause of action for breach of the Settlement Agreement, and requested bifurcation of this claim. The day before the court was scheduled to rule on this motion, the Mikoses filed for bankruptcy.

After several months of bankruptcy proceedings, the bankruptcy court transferred the case back to the superior court for a determination on the enforceability of the settlement between the Mikoses and the Bajans. The superior court then held a "[c]ourt [t]rial" on the issue of the enforceability of the Settlement Agreement. At the July 2014 trial, the Mikoses were represented by counsel and had an interpreter (their native language is Polish). The Mikoses testified and presented evidence in support of their

4

claims that their signatures on the Settlement Agreement resulted from duress and they did not understand what they were signing.

The next month, in August 2014, the court entered an order (August 2014 order) rejecting the Mikoses' claims and determining the Settlement Agreement was enforceable by the Bajans "through the remedy of specific performance." The court found the Mikoses failed to meet their burden to establish the Settlement Agreement resulted from coercion or duress or that the Agreement was unconscionable. The Mikoses' attorney signed the order, approving it as conforming to the court's ruling.

The matter then returned to the bankruptcy court. About six months later, the bankruptcy court issued an order dismissing the bankruptcy case and terminating all stays related to the case.

Meanwhile, the parties' counsel engaged in discussions regarding the form of the transfer deeds required by the Settlement Agreement, but the Mikoses ultimately refused to execute the deeds. In response, on April 20, 2015, the Bajans brought an ex parte motion seeking an order appointing an elisor to sign the necessary documents to transfer title under the terms of the Settlement Agreement and the August 2014 order.

In support of this motion, the Bajans submitted a copy of the Settlement Agreement and their attorney's declaration explaining the history of the litigation. Counsel stated the only remaining settlement term "is the Mikos Defendants' transfer of title on the [Property] to the Bajan plaintiffs," and that the action would be dismissed upon the execution of the deeds. (Capitalization omitted.) As detailed below, the Bajans' attorney also described the reasons the Bajans were moving ex parte (rather than by a

5

noticed motion), and stated he had given the Mikoses' counsel (David Pomeranz) 28 days' notice of the hearing and had scheduled the hearing date to accommodate Pomeranz's schedule.

At the April 22 ex parte hearing, the Mikoses were present and represented by attorney Pomeranz. The Bajans were represented by their attorney, Thomas Griffin. At the outset of the hearing, the Mikoses asked the court (through an interpreter) for an extension of time, stating they wanted a new attorney. Pomeranz said he had been unaware of the request, but he did not object and urged the court to grant a continuance. The court asked the Mikoses when they expected to retain a substitute attorney. The Mikoses responded they did not "exactly know," but they would be "grateful" if the court postponed the hearing to allow them to seek a new attorney.

The Bajans' attorney strenuously objected:

> "Mr. Pomeranz is the attorney of record. We have communicated with him. We set this date pursuant to his calendar. He was representing them in the bankruptcy proceeding, aware of everything. We served him with the moving papers in this, followed up with an email. I came here from San Jose this morning. [¶] [There is] [s]ignificant cost and expense to my client to come down here, arrive, and then suddenly this, and it's just the same pattern that has been occurring in this case for five years, the same pattern that the court found in the bankruptcy proceeding."

The Mikoses' interpreter said the Mikoses are "begging" the court for an extension, stating they "would like to get different representation" and the Property "represents 30 years of their life earnings." When the court asked the Mikoses to explain their need for more time, the interpreter replied: "They basically—in many instances were not aware of what was going on. Like, they don't understand why it was in

6

bankruptcy.  They don't understand why somebody else wants their house.  They don't understand all that.  They say that the last time they were here, they didn't have an interpreter.  When the [Settlement Agreement] was signed by them, they didn't know what they were signing."

The Bajans' counsel countered by directing the court to evidence that the Mikoses did have an interpreter at the prior hearing, and stated:

> "They've made this argument, 'We didn't understand what we signed,' multiple times.  It's been rejected multiple times. . . .  They were represented by an attorney who spoke Polish. . . .
>
> "I think it is extraordinarily prejudicial, as well as extremely expensive to my client, to keep coming . . . down here, and then having the defendants in the case simply say, 'Oh, we don't know what's going on.'  They have been represented by attorneys at every stage of this proceeding.  They've never appeared in pro. per.  [¶] They've . . . taken it up on appeal.  They've gone to bankruptcy on two different bankruptcy filings.  At some point, someone has to hold them accountable for what they have done, for the documents to sign, for the orders that have been entered in this case."

The court responded:  "I think that's correct.  This has been drawn out, drawn out, and drawn out, and these people have been represented throughout . . . ."  The court stated the Mikoses have not identified a justifiable need for a continuance, and that "the underlying facts have been determined.  What's left is to sign the documents.  I'm not going to reopen things that have already been done."  The court also observed that the Mikoses do not "have any arrangements with [another attorney] to come into this case and they can't tell me when they would have anyone.  If they were going to do that, they should have made the arrangements and had the attorney here."  The court also declined the Mikoses' request to submit new documents (which their attorney had not seen).

7

The Mikoses' interpreter then said the Mikoses are "asking for [an] extension because they don't want to give away . . . their house. That's what it is. It's giving it away." The court said, "That's been determined." The court asked whether there are "final orders . . . in this case?" And the Mikoses' counsel responded: "Yes, sir. Yes, Your Honor, your order of August 27, 2014."

The court then stated it would grant the Bajans' motion. Later that day, the court entered an order appointing an elisor (the San Diego County Superior Court Clerk) to sign two attached deeds, a grant deed and a quitclaim deed. The grant deed states in relevant part: "HALINA MIKOS . . . [¶] hereby GRANTS [the Property] to [¶] MATTHEW BAJAN, JR. and BOGUSLAW BAJAN as tenants in common, while reserving therefrom a life estate in favor of HALINA MIKOS and JAN MIKOS, subject to the terms and conditions set forth in the . . . Settlement Agreement in Exhibit B attached hereto, and incorporated herein by reference." The quitclaim deed states in relevant part: "JAN MIKOS . . . [¶] hereby [quitclaims the Property] to [¶] MATTHEW BAJAN, JR. and BOGUSLAW BAJAN as tenants in common, while reserving therefrom a life estate in favor of HALINA MIKOS and JAN MIKOS, subject to the terms and conditions set forth in the . . . Settlement Agreement in Exhibit B attached hereto, and incorporated herein by reference."[3]

---

[3] This second deed was necessary because during the litigation, Mr. Mikos transferred the Property by quitclaim to Mrs. Mikos.

DISCUSSION

## I. *Appealability*

The Mikoses appeal solely from the April 22, 2015 order appointing the elisor. On our own motion, we raised the issue of whether this order is appealable and provided the parties an opportunity to brief the issue. The Bajans filed a responsive letter brief, but the Mikoses did not.

Based on the applicable authorities, we conclude the order is appealable as a postjudgment order. (See Code Civ. Proc., § 904.1, subd. (a)(2).) Although there has been no final judgment entered in the action (because the matter was settled), in its August 2014 order, the court made a final determination of the parties' rights pertaining to the settlement and determined the settlement is enforceable and binding on the parties. The Settlement Agreement required dismissal of the action, and thus the court's August 2014 order enforcing the agreement effectively ended the litigation. The order came after a hearing at which the parties were represented by counsel, filed briefs, submitted evidence, and provided testimony on the issue whether the Settlement Agreement was an enforceable contract. The Mikoses' counsel later confirmed the order was intended as a final order. On the record before us, this order may be treated as a final judgment for purposes of determining that the later order appointing the elisor is appealable as a postjudgment order. (See *Bank of California v. Thornton-Blue Pacific, Inc*. (1997) 53 Cal.App.4th 841, 845-846.)

9

## II. *Appellate Principles*

A fundamental rule of appellate review is that a challenged order is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) " 'All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Ibid.*; see *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) If the judgment or order is correct on any theory, the appellate court will affirm it. (*Estate of Beard* (1999) 71 Cal.App.4th 753, 776-777.)

An appeal is not a second hearing or trial. The role of an appellate court is to determine whether any error occurred, and if so whether that error was prejudicial to the defendant. Absent a prejudicial error, a Court of Appeal cannot reverse an order or remand a matter for a new hearing. (See *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187.) Additionally, the fact the Mikoses are representing themselves on appeal does not give them greater rights than a represented litigant. (*Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 795.) In propria persona litigants are presumed to know the applicable rules. (*Ibid.*)

## III. *Analysis*

A court may appoint an elisor to enforce its orders or judgments. (*Blueberry Properties, LLC v. Chow* (2014) 230 Cal.App.4th 1017, 1020-1021; *Rayan v. Dykeman* (1990) 224 Cal.App.3d 1629, 1635.) If a party "will not or cannot execute a document necessary to carry out a court order, the clerk of the court, or his or her authorized representative or designee may be appointed as an elisor to sign the document." (Super. Ct. San Diego County, Local Rules, rule 2.5.11.)

The Mikoses do not challenge the court's authority to appoint an elisor to enforce its earlier August 2014 order. They instead contend the court erred because the deeds to be signed by the elisor were inconsistent with the Settlement Agreement. They also contend the court erred in issuing the order at an ex parte hearing and in refusing to continue the hearing. As explained below, these contentions are without merit. We also reject the Mikoses' request that we consider newly submitted evidence.

## A. *Deeds Are Consistent with Settlement Agreement*

The Mikoses contend the court erred in appointing the elisor because they say the deeds contained conditions inconsistent with the Settlement Agreement terms. The argument is without merit. The court appointed an elisor to sign the deeds that expressly incorporated the terms of the Settlement Agreement. The deeds provided that the transfer of the Property (while reserving a life estate) was "subject to the terms and conditions set forth in the . . . Settlement Agreement . . . attached [to the deed]." Under these provisions, the deeds were expressly derived from, and consistent with, the Settlement Agreement.

In support of their appellate contentions, the Mikoses rely solely on a *draft* grant deed that is not the final version of the deed attached to the court's order appointing the elisor and is not the version of the deeds signed by the elisor.[4] The deeds ordered to be

_____

4    We grant the Bajans' request that we take judicial notice of the grant deed and quitclaim deed signed by the elisor (the Clerk of the San Diego County Superior Court). (See Evid. Code, § 452, subd. (c).)

11

signed did not contain the identified deficiencies. Thus, the Mikoses' arguments are unavailing.

We also reject the Mikoses' contention the court erred in appointing the elisor because the signed deeds "may fail to prevent property tax reassessment." (Capitalization omitted.) The Settlement Agreement contains a provision stating the Property is to be transferred "so as not to trigger reassessment of property taxes." The Mikoses forfeited this argument because they did not raise it in the proceedings below. (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2006) 136 Cal.App.4th 212, 226.) Additionally, as the Mikoses admit, there is nothing in the record showing the signed deeds will trigger a property tax reassessment. To the extent the transfer does trigger a property tax reassessment, the Mikoses retain their rights (if any) to seek reimbursement from the Bajans.

The Mikoses next contend the elisor appointment was improper because the Settlement Agreement states the transfer document will be drafted by the Bajans' attorney with "approval" by the Mikoses. The Mikoses argue that because they never approved the deeds, the court erred in appointing the elisor to sign the documents. The argument is without merit. Viewed in context, this approval provision gave the Mikoses limited review authority over the transfer document, but did not permit the Mikoses to refuse to execute the document without any reasonable basis. A contrary conclusion would render the Settlement Agreement illusory.

12

B. *Procedural Challenges Are Without Merit*

The Mikoses next contend the court erred by appointing the elisor at an ex parte hearing and in refusing to provide them with a continuance. These arguments are without merit.

Generally, an ex parte application requires the moving party to submit evidence showing "irreparable harm" or "immediate danger." (Cal. Rules of Court, rule 3.1202(c).) In moving for ex parte relief, the Bajans presented their counsel's declaration stating the court's noticed motion calendar is "significantly impacted" and any additional delay in executing the deeds would substantially prejudice the Bajans' rights. Counsel explained that the Mikoses have claimed significant health problems, and that if one or both of the defendants were to die before the deeds could be signed, this would likely trigger protracted probate litigation. Counsel also said an expedited hearing was necessary because the Mikoses had "engaged in a pattern[] of transferring ownership of [the Property] in an attempt to conceal the true ownership, or otherwise frustrate the terms of the Settlement Agreement," including an interspousal transfer despite the ongoing litigation.

On this record, the court did not abuse its discretion in deciding the matter on an ex parte basis. At the ex parte hearing, the Mikoses were represented by counsel. The Mikoses had 28 days' prior notice of the motion, and the hearing was held on a date requested by the Mikoses' counsel. The Bajans served the Mikoses with their papers before their hearing, including a memorandum of points of authorities and supporting declarations.

13

We also reject the Mikoses' contention the court erred in refusing to continue the hearing. Trial courts have broad discretion in ruling on continuance motions, and a reviewing court must uphold the ruling absent an abuse of discretion. (*Mahoney v. Southland Mental Health Associates Medical Group* (1990) 223 Cal.App.3d 167, 170.) " ' "Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered." ' " (*Ibid*.) In evaluating the court's ruling, relevant factors include the reasons presented to the trial court for the request, whether a continuance was necessary to allow the parties to present relevant evidence, and whether the refusal of a continuance will have the practical effect of denying a fair hearing. (See *In re Marriage of Hoffmeister* (1984) 161 Cal.App.3d 1163, 1169.) An appellant has the burden of showing an abuse of discretion and prejudice resulting from the denial of the request. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1126.)

The court did not abuse its discretion in denying the continuance motion. The court repeatedly asked the Mikoses for the reason for the continuance. They responded by reasserting their objections to the Settlement Agreement and/or stating they wanted to retain a new attorney. The court had a reasonable basis to find these assertions did not justify additional delay. The court found the Mikoses already had a full and fair opportunity to assert their objections to their Settlement Agreement at the July 2014 hearing, and had been represented by counsel at the time. The issue at the ex parte hearing concerned only a narrow issue of enforcing the court's prior order. The Mikoses did not suggest they were precluded from presenting all relevant evidence on this issue at the ex parte hearing. Additionally, the court reasonably found the Mikoses' request to

14

retain a new attorney did not justify a continuance, as the Mikoses were raising the issue for the first time at the hearing (despite 28 days' prior notice of the hearing); the Mikoses had apparently taken no steps to find a new attorney; and the Mikoses were unable to identify any reasonable basis that they needed a new attorney.

### C. *Additional Materials Are Not Properly Before this Court*

The Mikoses did not file a reply brief, but after the deadline for filing a reply brief, they filed 75 pages of new materials. These materials include the Mikoses' lengthy joint declaration (prepared after they filed their opening brief in this case) in which they reassert many of their prior arguments challenging the Settlement Agreement and ask this court to issue a ruling "so [they] can keep the house as theirs." Many of the attached documents are dated more than 18 years ago.

We decline to consider the Mikoses' declaration or the attached materials. First, they are untimely. Absent good cause, a party cannot submit new materials after the statutory briefing deadlines. The Mikoses did not present any grounds showing good cause for the untimely filing. Second, there is no indication that these materials were before the trial court when it ruled on the Bajans' motion. Thus, we are precluded from considering them. (See *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3; *Pulver v. Avco Financial Services* (1986) 182 Cal.App.3d 622, 632.) Third, the materials do not appear to be relevant to the issues before us, concerning the court's authority to appoint an elisor to implement the terms of its prior order. The documents refer mainly to the enforceability of the Settlement Agreement, and the court's ruling on that issue has long been final.

15

DISPOSITION

Affirmed.  Appellants to bear respondents' costs on appeal.


HALLER, J.

WE CONCUR:


HUFFMAN, Acting P. J.


NARES, J.